## THE GRANGE MILL COMPANY

*v.*

## THE WESTERN ASSURANCE COMPANY *et al.*

*Filed at Mt. Vernon November 10, 1886.*

1. INSURANCE—*insurable interest—in a purchaser.* One in the possession of property under a contract of purchase, who has made a partial payment thereon, has such an equitable interest therein as to uphold an insurance of the same against loss by fire.

2. SAME—*who entitled to insurance money—as between vendor and purchaser, or mortgagor and mortgagee.* As between the vendee and vendor, the insurance money, in case of the destruction of the property, represents the property itself, and in equity the insurance money should be appropriated to the vendor, to the extent of the unpaid purchase money, in case of the insolvency of the vendee.

3. Where a mortgagor or vendee agrees to insure for the benefit of the mortgagee or vendor, in equity such mortgagee or vendor will be entitled to the insurance money in case of a loss, to the extent, at least, of the interest of the mortgagor or vendee in the property insured; and after notice to the insurance company having the risk, it can not pay the loss to the assured, except at its peril, until the rights of such mortgagee or vendor shall have been adjusted.

4. SAME—*proof of loss—waiver, by putting defence on other grounds.* Proof of loss under a policy of insurance is waived when the company places its refusal to pay on the sole ground that the assured had no title or insurable interest in the property destroyed.

5. SAME—*breach of warranty—false representations.* If material representations made in an application for an insurance are untrue and false, there will be a breach of the warranty implied in every application, and the policy will be void.

6. SAME—*burden of proof as to breach of warranty.* The party seeking to recover for a loss under a policy of insurance need not produce the application, and prove that the representations therein contained were correct. If any material representation by the assured was false, this is a matter for the defence to show.

7. EVIDENCE—*as to matters admitted.* A complainant in chancery is not required to prove any fact or facts alleged in his bill, and distinctly admitted by the defendants in their answers.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of Union county; the Hon. DANIEL M. BROWNING, Judge, presiding.

Mr. JOHN M. LANSDEN, for the plaintiff in error:

Where a vendee, who has agreed to insure for the benefit of the vendor, insures for his own benefit alone, the vendor, in the event of loss, may, upon giving notice to the insurance company, compel it to pay the insurance money to him. *Cromwell* v. *Insurance Co.* 44 N. Y. 52; *Ames* v. *Richardson,* 29 Minn. 330; *Wheeler* v. *Insurance Co.* 101 U. S. 439; *Miller* v. *Aldrich,* 31 Mich. 408; *Nichols* v. *Baxter,* 5 R. I. 491; *In re Sands Ale Brewing Co.* 3 Biss. 175; Wood on Insurance, sec. 134, p. 266; *Insurance Co.* v. *Mitchell,* 67 Ill. 43.

The assured is not bound to set out and prove the truth of his representations. They are subject to attack by the defendant. *Herron* v. *Insurance Co.* 28 Ill. 238; *Insurance Co.* v. *Folson,* 18 Wall. 253.

Notice to the agent of the insurance company is notice to the company. *Insurance Co.* v. *Wells,* 89 Ill. 82; *Insurance Co.* v. *Wright,* 22 id. 463.

Placing refusal to pay upon the sole ground of a want of title, is a waiver of proof of loss. Wood on Insurance, sec. 417, p. 714; *Insurance Co.* v. *Dunmon,* 75 Ill. 14; *Norwich Co.* v. *Insurance Co.* 34 Conn. 561; *Insurance Co.* v. *Tucker,* 92 Ill. 64; *Insurance Co.* v. *Meyer,* 93 id. 271; *Insurance Co.* v. *Grunert,* 112 id. 68.

It was not necessary to prove the facts alleged, and admitted to be true by the answers of the defendants.

Mr. W. S. DAY, and Messrs. CRAWFORD & BUSSEY, for the defendants in error.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The original bill in this case was brought by the Grange Mill Company, in the circuit court of Union county, against certain insurance companies and John T. Emison and Lee Musselman. It is alleged, complainant sold its mill property to defendant Emison at a certain price, a part of which was paid in cash, and the remainder was to be secured to be paid by his promissory note, with interest. The negotiations for the sale of the property seem to have been conducted by a real estate agent, and the contract agreed upon, whatever it may have been, was never fully complied with by Emison. It seems he refused to execute his note for the unpaid balance of the purchase money, and refused to accept the bond for a deed that was drawn up for delivery. Notwithstanding his refusal to execute the papers prepared, Emison did take immediate and exclusive possession of the mill property, which was surrendered to him by the company, under the alleged contract, and, perhaps, commenced to operate it. Afterwards, Emison associated with himself one Lee Musselman, and thereafter carried on business under the name of John T. Emison & Co. The alleged contract of sale was made in October, 1880. Shortly after Emison & Co. began to operate the mill, they procured insurance upon it, for their own benefit, from the defendant insurance companies, amounting in the aggregate to the sum of $5000. In June, 1881, the mill property was totally destroyed by fire. No further sum had then been paid on the purchase price of the property. Suits had been commenced by Emison & Co. against the several insurance companies, to recover for the losses sustained. Pending those suits, this bill was filed, in which the insolvency of Emison & Co. was alleged, and by which complainant claimed the benefit of the insurance, under an alleged contract made with Emison, at the time of the sale of the property to him, to have it insured for its benefit. To the bill the several insurance

companies were made defendants, with Emison and Mussel-man. A summons was issued for the defendant companies on the 7th day of November, 1881, and an effort was made to obtain service. Other process was subsequently issued, and such service was had that the defendant companies came into court and defended. An amended bill was filed, in which it was alleged that Emison & Co. recovered judgments in the actions on the policies against the several companies, which judgments, while appeals were pending in the Appellate Court, were in some way settled by the payment to Emison & Co. of the sum of $2500, each company paying a sum in proportion to the amount of its risk. On the answers filed by the several defendant companies, and the replication thereto, and upon the evidence, both documentary and oral, the cause was heard in the circuit court, and the bill was dismissed for want of equity. That decree was afterwards affirmed in the Appellate Court for the Fourth District, and complainant brings the case to this court.

The bill is framed on the theory, Emison agreed at the time of the sale, and as a part of the contract, that he would have the property insured for the benefit of complainant. The evidence contained in this record has been subjected to a careful consideration, and it is thought it fully sustains the position taken, that Emison did agree to have the mill property insured for the benefit of his vendor. It is so expressed in a written memorandum made at the time, and that memorandum was given in evidence, by plaintiffs, in the trial of the case of *Emison & Co.* v. *Traders' Ins. Co.* That was evidence tending to show there was a contract that insurance should be procured. But aside from the written memorandum, the agreement to procure insurance upon the property for the benefit of complainant is fully established by other testimony. Undoubtedly, the law is, that, as between the vendee and the vendor, the insurance money, in case of the destruction of the property, represents the property itself, and in equity the in-

surance money should be appropriated to the vendor in case of the insolvency of the vendee. The principle is of frequent application, where a mortgagor or vendee agrees to insure for the benefit of the mortgagee or vendor, in case of loss, in equity, such party is. entitled to the insurance money, to the extent, at least, of his interest in the property which was the subject of insurance. After notice to the insurance company having the risk, such company can not pay the loss to the assured named in the policy, except at its peril, until the rights of the parties claiming the fund shall have been adjusted. Cases in this State, and elsewhere, recognize this equitable doctrine. *Phœnix Ins. Co.* v. *Mitchell,* ·67 Ill. 43 ; *Cromwell* v. *B. F. Ins. Co.* 44 N. Y. 42; *Wheeler* v. *Insurance Co.* 101 U. S. 439.

The general doctrine on this subject is not questioned, but the defence is rested mainly on two grounds : First, that prior to making the compromise or settlement, as was done with the assured, the insurance companies had no notice of the claim now insisted upon by complainant ; and second, that the policies were, for some reason, not obligatory on the companies issuing them, and for that reason they were under no legal liability to pay the losses to the assured. It follows, as a matter of course, if the companies were under no obligation to pay the losses to the assured, there could be no obligation to pay complainant.

It appears from the acquittance taken from Emison & Co., on payment of the sums agreed upon, by way of compromise or otherwise, that the companies each had actual notice, before anything was paid to Emison & Co., of the equities of complainant, for in it they provided, in the "event of any further litigation by the Grange Mill Company," neither company was to be affected by the payment of the sums of money paid, or otherwise. To what "further litigation" is the reference ? Obviously, to "further litigation" on the present bill, then pending. There was then no other litigation pending any-

where, or in any court, that could affect the parties in regard to the matters they were contracting about it.   In case the litigation then pending should be continued by complainant in this suit, it was agreed neither defendant should be affected by what was done by the parties to the settlement they were making.   If it had no reference to complainant's bill, then there was nothing to which it could, by any possibility, refer. Conceding then, as must be done, the reference is to the present bill, it is conclusive as to the actual knowledge of defendants of the equities of complainant.   The fact of notice is therefore fully proved, and if they paid anything to Emison & Co. on the policies, it was wrongful, and at the risk of the companies paying it.

Passing now to consider the second question made on the defence, it is seen it is the most important question discussed. It is, whether the evidence contained in this record shows a *prima facie* right to relief in favor of complainant.   It is thought it does.   It is made a ground of objection, the policies issued by the insurance companies were not introduced in evidence.   Under the pleadings that was not necessary.   The making of the policies by the several companies, the amount of the risk carried by each, and for whose benefit made, were all facts distinctly admitted by defendant insurance companies in their joint and several answers.   It was wholly unnecessary, therefore, to prove that which was solemnly admitted by the answer, and the practice does not require it. The destruction of the mill property by fire, is also admitted in the answer of defendants, and proof of that fact was unnecessary.

It is said there is no proof of loss given by the assured. That fact was waived by the companies placing their refusal to pay the losses, on the sole ground the assured had no title to the property destroyed.   The evidence in this record shows the refusal to pay the loss was for the reason the assured had no insurable interest in the property.   That they had such

26—118 ILL.

an interest appears, past all doubt, from the evidence in this record. Emison had bought the property, had made partial payment, and was in possession, under his contract, at the time the policies were written. He, and his partner that he had taken in with him, were the equitable owners of the property insured, at the time, and had they paid the balance of the purchase money they would have been entitled to a deed. These facts, when established, either by admission or proof, were *prima facie* sufficient to warrant the relief demanded by complainant. Of course the *prima facie* case thus made is liable to be defeated. If the representations made in the application were untrue and false, then there would be a breach of the warranty implied in every application for insurance, and the policies would be void. That, however, is a matter of defence. It was not necessary for complainant to introduce the application, and prove the representations it contained were correct. That proof should come from defendants, if they, or either of them, insisted they had been overreached in writing the policies. The defendants made no such proof, nor did they ever charge the assured with any actual fraud in obtaining the policies. The insistence by defendants has all the time been, that the policies were void because the assured had no title to the property. It may be, when the companies come to make their defence, it will appear the assured represented their insurable interest in the property correctly. How that may be, can not be known until the defence shall be unfolded.

The judgment of the Appellate and the decree of the circuit courts will be reversed, and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Judgment reversed.*