# ELGIN LUMBER COMPANY

## v.

## SOLOMON LANGMAN AND GEORGE UTMAN.

*Mechanic's Lien—Destruction of House by Fire before Completion—Mortgage on Lot for Purchase Money—Proceeds of Insurance on House—Priority of Liens—Practice—Appeals.*

1. Upon a bill filed to enforce a lien for lumber and material used in the construction of a house, which was destroyed by fire before completion, and to obtain a decree finding the mortgage lien for purchase money on the premises secondary and subordinate to the lien of the complainant in respect to the insurance money due on a policy issued to the owner, the loss being payable to the mortgagee by whom the premium was paid, it is *held:* That the filing of the mortgage for record and the making of the contract being on the same day, the presumption is that they were simultaneous acts; that under the circumstances, as the mortgage is the older equity of the two, it is a prior lien on the lot; that the mortgagee has a prior lien on the insurance money; and that the rights of the mortgagee are not affected by the fact that he obtained a high price for the lot.

2. Where an appeal is taken from the Circuit Court to this court, the case is, in contemplation of law, pending here from the moment the appeal bond is executed and filed in the Circuit Court. Thereafter that court is without jurisdiction of a motion for a rehearing, even within the term.

[Opinion filed June 9, 1887.]

APPEAL from the Circuit Court of Kane County; the Hon. ISAAC G. WILSON, Judge, presiding.

Mr. J. W. Ranstead, for appellant.

Messrs. R. M. Ireland and R. N. Botsford, for appellees.

Baker, P. J.  The objects of this bill, filed by the Elgin Lumber Company, were to enforce a lien under the statute for lumber and materials furnished by them to George Utman and used by him in the construction of a dwelling house on a lot in Elgin owned by him, and which house was destroyed by fire before it was finished; and also to obtain a decree that the mortgage lien of Solomon Langman for purchase money of the premises was secondary and subordinate to their lien as material men in respect to the insurance money due on account of the burning of the house.  Before the hearing the insurance company paid into court the amount of the loss on the house, and the money was held to abide the order of the court.

Waiving for the present the matter of a rehearing, it is urged that there are two errors in the decree that was entered in the Circuit Court.  One of these alleged errors is, that it was error to decree that the mortgage was a prior lien on the lot. It is virtually conceded that the admissions made in the bill, and the proofs and admissions made at the hearing, fully justified the court in the findings recited in the decree, that the verbal contract for furnishing materials for the building, made between the appellant corporation and Utman, was entered into on the 24th day of April, 1885 ; and that the note and mortgage to Langman, to secure the unpaid purchase money of the lot, were executed and delivered on the 14th day of April, 1885.  There is no finding in the decree in regard to the time when the mortgage was filed for record.  It is, however, stated in the decree that the mortgage was introduced in evidence, and the same fact is stated in the certificate of evidence; and in this latter the mortgage is copied at length with the certificate of the recorder indorsed thereon, showing that said instrument was filed for record at 2:15 o'clock p. m. of the 24th day of April, 1885.  In that state of the case, there being no testimony to indicate at what hour of the day the contract for lumber was entered into, the presumption of

the law is that making the contract and filing the mortgage for record were simultaneous acts, and the rule is that where there are equal and competing equities the oldest equity will prevail. It was not, therefore, error to decree that the mortgage for purchase money executed and delivered on the 14th of April was a prior lien on the lot, and had precedence over the contract for materials made on the 24th of April.

The other error assigned in respect to the decree rendered, is that it was error to adjudge that Langman had a prior lien on the insurance money deposited in court. The mortgagor covenanted in the mortgage to keep all buildings on the premises insured and make the loss, if any, payable to the mortgagee, as further security for the mortgage indebtedness. It appears, however, he failed to do this. On the 15th day of May, 1885, the German Fire Insurance Company of Peoria issued a policy insuring Utman, the mortgagor, against loss or damage by fire, "loss, if any, payable to S. Langman."

The evidence shows that Langman himself procured this insurance and paid the premium therefor, and did this for the purpose of making his notes more secure. The written policy itself must determine who was the assured and whose interest was insured; and upon the authority of Continental Ins. Co. v. Hullman, 92 Ill. 145, we must hold that by the terms of this policy Utman was the assured and that it was his interest that was insured. The case cited, however, was an action at law, and was between the insurance company and Hullman & Cox, the mortgagees, and persons designated in the policy as the parties to whom the loss, if any, should be paid, and involved only the question of the legal liability of the company upon the policy. No such question arises here; the liability has been admitted and the insurance money deposited in court; and the matter in hand is the distribution of this fund to be made by the court of chancery. It may be remarked, in passing, that it does not appear here, as it did in the case mentioned, that the premium paid for the insurance was either changed to the mortgagor or included in the notes and mortgage.

It is a familiar principle that equity, in order to do justice, will frequently treat the money derived from property as it

would the property itself, and will follow it as long as it can be identified.   Appellants claim that this equitable principle is, under some circumstances, held to apply to insurance money; in which event the insurance money is held to represent the buildings destroyed and to be subject to the same liens, exceptions and rights.

This contention must be at once conceded, as many cases of that sort are to be found in the books, and one of the most recent of these is the case of the Grange Mill Co. v. Western Assurance Co., 118 Ill. 396.   One answer made by appellee to this claim of appellants is that their lien for lumber and materials is merely statutory and is only upon the lot and house and appurtenances, and is in derogation of common law, and must be strictly construed, and not extended to embrace cases that are not within the language of the statute.   We think this an insufficient answer.   In the early case of Gaty v. Casey, 15 Ill. 189, the materials furnished and attached to the freehold had become severed therefrom by fire, and sold by the purchasers under a deed of trust upon the premises, and it was held that a court of equity would treat the money derived from such sale as it would the property before a sale, and in behalf of the persons entitled to the mechanic's lien would pursue it into the hands of the party who had converted the property into money.

This decision sufficiently indicates the rule to be that where the property to which the statutory lien attached has been converted into money, the court will, in a proper case, and for the benefit of the holders of the lien, treat the money as substituted for the property.   It is a circumstance of no controlling importance, that in the one case the conversion is effected by selling the property and thereby putting it beyond the reach of the court, and that in the other case the same result is reached by means of an insurance and subsequent destruction by fire.   If Utman himself had procured this insurance and paid the premium, and the insurance had been upon his interest in the premises, and the loss was payable to himself, then a very clear case for the application of the rule urged by appellants would be presented.

It will be noted that in Gaty v. Casey, *supra*, the conversion was in violation of the prior right of the licnor. So, also, in the case we have above supposed; and assuming the house destroyed by fire had been constructed out of lumber and materials furnished by appellants, the appropriation of the insurance money to his own use by either Utman or appellee, leaving appellants unpaid, would have been in violation of their rights as material men. But, in the case at bar, we are unable to see that any right vested in them has been infringed upon, or that they have been placed in any worse position by that which was done by appellee.

It is true that the statute provides in express terms that no incumbrance upon land, created before or after the making of a contract under the provisions of such statute, shall operate upon the building erected or materials furnished, until the lien in favor of the person doing the work or furnishing the materials shall have been satisfied. Appellee, however, is not seeking to collect his mortgage by a sale of either the building or the materials; both of these were long since wholly destroyed by fire. On the other hand, appellants are themselves coming into the court of equity, and asking that court to assist them in appropriating to their use the fruits of the superior diligence and foresight of appellee, and the benefits to be derived from an investment of his own money made for his own better security.

Had Utman procured the insurance or had his money paid the premium, or had the premium been included in the notes he gave, or had it been charged to him, it is possible that appellant would have had a better footing to stand upon. Langman had an insurable interest, and might have insured that interest in his own name and for his own benefit; and even if he had no such interest it was a matter for the consideration of the insurer, and with which appellants had no concern. They also had an insurable interest in the house, superior to that of Langman, and might readily have effected an insurance thereon, and the insurance of Langman would not have precluded them from so doing, and if any one had suffered by the double insurance it would have been him.

They did not see fit to do this, but now seek to reap the benefits paid by Langman. That which was done by him, instead of being injurious, has been beneficial to appellants. Had there been no insurance, it is admitted that the entire value of the lot, upon which he had the prior lien, would have been insufficient to discharge his mortgage debt, and appellants would have been left without any security whatever. With the insurance, all that the lot may bring at public sale, in excess of costs, and the sum of $177.55, and interest to be paid to Langman, is by the decree of the court to be divided *pro rata* between appellants and the other lienholders.

It is urged that Langman sold the lot to Utman for some $300 more than its real value, and that he should not be allowed to reap this profit by means of the insurance money. Utman is not complaining that he was in any way defrauded or wronged in the trade, and if Langman made a good bargain and was so provident as to secure its benefits, without doing injury to the rights of any one else, we do not see upon what principle of either law or equity, he should be precluded from enjoying the advantages arising from his good fortune.

The only point with reference to the insurance money that seems to present any difficulty, is the fact that Langman, instead of procuring the insurance in his own name and upon his own interest, took the insurance in the name and upon the interest of the mortgagor. The policy states, however, that the loss, if any, is payable to S. Langman; and the evidence shows he, and not Utman, procured the insurance and paid the premium, and did so for the purpose of making the debt due him more secure. No detriment, but a benefit, has accrued therefrom to appellants. It would seem it would be inequitable and unjust to take from him the benefits of his vigilance and caution, confiscate the fund for which he paid the consideration, and turn it over to other creditors whom he has deprived of no right, and who would be in worse condition than they are if he had not providently done that which he did. In our opinion there was no error in the decree of the court in respect to the insurance money.

The record shows that the decree was entered on the 28th

day of October, 1886, it being one of the days of the October term; and also that on the same day an appeal therefrom to this court was perfected in filing in the Circuit Court an appeal bond, which was duly approved by said court. On the 26th day of November, 1886, the same also being one of the days of said term, but nearly a month after the time when the appeal bond was filed and approved, the appellants entered in the Circuit Court their motion for a rehearing of the cause, based upon affidavits, which motion was overruled and denied by the court. This action of the court in denying the motion and petition for a rehearing, is also assigned as error.

The statute gives the right to appeal from all final judgments, decrees and orders of the Circuit Court. The decree rendered on the 28th day of October, was a final decree, and one from which appellants had the right of appeal. If the appeal had not been taken, it is clear the case would have been still pending in the Circuit Court, when the petition for a rehearing was presented, and the decree would have been *in fieri* and subject to change or modification, or to be set aside or vacated until the final adjournment of the term. The issue is in respect to the result that was accomplished by filing the appeal bond. In Owens v. McKethe, 5 Gilm. 79, it was held that an appeal is perfected by filing the appeal bond, and that the case, from such time, is pending in the court to which the appeal is taken. In Simpson v. Alexander, 5 Gilm. 260, it was held that an appeal was consummated by the filing of the bond, but that until that time the case is not pending in the appellate jurisdiction. In Reynolds v. Perry, 11 Ill. 534, the Supreme Court said: "It is not the filing of the record by the appellant which gives this court jurisdiction of an appeal. The case is, in contemplation of law, pending in this court the moment the appeal bond is executed and filed with the clerk of the Circuit Court." According to the doctrine of these cases, when the petition for a rehearing was presented in the Circuit Court, this cause was no longer pending in that court, but in this court. It is axiomatic that one and the same controversy and cause can not be pending at one and the same time in two or more different and distinct tribunals. Juris-

diction is the power to hear and determine a cause, and when the rehearing was asked, the court below no longer had jurisdiction and authority to judicially determine that it should be allowed.

Appellants insist that Hook v. Richeson, 106 Ill. 392, and 115 Ill. 431, is a case analogous to this, and an authority to show the decree herein did not become final until the adjournment of the term at which it was rendered. We do not so understand Hook v. Richeson. There the decree was entered in vacation, and in such case the statute (R. S., Chap. 37, Sec. 65,) expressly provides 'it may be set aside or modified at the next term of the court, by motion filed on or before the second day of the term, and that if not so set aside or modified, it shall thereupon become final. The appeal was taken in vacation, and it was held the decree was *in fieri* at the time the appeal was taken, and that therefore, and because the appeal was taken before the next term after the decree was entered in vacation, such appeal was premature; we do not regard the case as holding that, if no motion had been interposed on or before the second day of the succeeding term excepting to the decree or asking that it should be modified or set aside, it might not from and after that time and during such term properly have been appealed from; and we do not understand the language of the statute to justify the conclusion, an appeal under the circumstances suggested would be premature. See also, First National Bank v. Cope, 3 Ill. App. 203. The general rule is that a decree is subject to be altered or vacated, upon motion or petition for rehearing, at any time during the term at which it is rendered. But then, there are exceptions to almost all general rules. In the record before us, the court had entered a final decree, but it was still subject to the supervision of the court during the term. Appellants, instead of asking that it should be changed or vacated, made their election to regard it as the final decree of the Circuit Court in the cause, and by filing an appeal bond and thereby perfecting the appeal which had been granted them, transferred the jurisdiction of the cause to the Appellate Court, and thereby ended

the power and authority of the court below to any longer act judicially therein.

Under the statutes of 1845, the time within which the appellant was required to file a transcript of the record in the appellate tribunal dated "from the time of making the appeal;" under the Act of 1865 it dated from the time of the rendition of the decree, judgment or order appealed from, and under the law of 1879, now in force, it dates from the last day of the term. Under the statute of 1845, and the Act of 1865, the rule insisted upon by appellants would necessarily have led to complications and embarrassment and clashings in courts of different jurisdictions.

Under the statute as it now stands, and in view of the long terms of Circuit Courts which are held in some of our larger and more populous counties, and of the fact that, although under the present law the record would in no case be required to be filed in the Appellate Court until after the final adjournment of the term of the trial court, yet that transcripts from such latter courts are frequently and voluntarily filed in the Appellate Court and the causes submitted and decided there before the final adjournment of the term of the trial court at which the judgment or decree was rendered, the same troubles would occur, and lead to absurd results that can readily be perceived. We think there was no error in denying the petition for rehearing.

It would be superfluous to express an opinion upon the merits of the matters set up in the petition, for in the view we have taken the Circuit Court would not have done otherwise than deny the motion and petition for a rehearing.

Finding no manifest error in the record, the decree is affirmed.

*Decree affirmed.*