THE HOME INSURANCE COMPANY OF NEW YORK

v.

T. BETHEL ET AL., FOR USE.

*Fire Insurance—Policy—Conditions—Waiver—Title—Proof of Loss—Practice—Estoppel.*

1. If an insurance company, after notice of a loss and with full knowledge of the facts, resolves not to pay, and places its refusal on the distinct ground of non-liability, formal proofs of loss must be considered waived.

2. Likewise where refusal to pay is based on the ground that assured had no insurable interest in the property at the time of the loss.

3.   A waiver of a condition in an insurance policy, declared and raised by the law as the legal result of acts done, and facts proven, does not need the consent or acquiescence of the company or any of its agents.

4.   To constitute an estoppel, there must be a r ·presentation concerning material facts, and the party to whom it was made must have been ignorant of the truth of the matters.

5.   The objection that there is a variance between the proof and the declaration, can not be primarily made herein.

6.   An executory contract of sale without change of possession does not constitute a change in, or transfer of, the title.

7.   Provisions in ·policies of insurance providing that they shall become void if there be a change in the title of the property insured, are to be construed strictly.

8.   This court holds, in view of the evidence, that the title to the property in question was neither " mortgaged or incumbered " by the giving of the executory contract of sale involved.

9.   Although at the time of a given fire the owner of property insured has outstanding a contract for the sale of the same, there remains in him an insurable interest, and a right of recovery exists as to the extent of such interest.

[Opinion filed December 3, 1891.]

APPEAL from the Circuit Court of Montgomery County; the Hon. J. A. CREIGHTON, Judge, presiding.

Messrs. LANE & COOPER, for appellant.

Messrs. McWILLIAMS & SON, for appellees.

BOGGS, J.   In 1885 John Barrett was the owner of certain lots in Litchfield, Illinois, upon which was situate a dwelling house and barn.   On the 25th of July of that year the appellant issued to him its policy of insurance, indemnifying him against loss to such building by fire, for a term of five years. On the 4th of September, 1888, Barrett ·sold the property to T. Bethel and Mary A. Roth for $1,600, of which sum $500 was paid in cash, and for the remainder two notes were given by Bethel and Roth to Barrett, each for $550, one due in one year and the other in five years.   Barrett gave to Bethel and Roth a bond requiring him to execute a deed for the premises when these notes were paid.   The policy, with the consent of

the appellant, was assigned by Barrett to Bethel and Roth; the loss, if any occurred thereunder, was by consent of appellant indorsed on the policy to be paid to Barrett to the extent of the notes to be held for the remainder of the purchase money of the property.  On the 11th of February, 1889, Barrett sold and assigned the notes to David Davis, the beneficial plaintiff in the court below, and executed a warranty deed conveying the property to Davis subject to the Barrett contract to convey to Bethel and Roth if the notes were paid.  This deed, by agreement between Barrett and Davis, was not to be recorded nor held as title as long as Barrett lived, but was left in charge of Davis with a further agreement that if Bethel and Roth paid the notes that Barrett would execute a deed to them direct; but if Barrett should have in the meantime died, then Davis was to record the deed and make the conveyance himself.  The policy was then so indorsed by the appellant that the loss, if any, should be paid to Davis to the extent of the amount unpaid on the notes.  The interest of Bethel in the property appears to have been only nominal and contingent upon conditions with which he never complied, of which the appellant was fully advised and of which it makes no complaint.

Mrs. Roth had the exclusive possession of the property and remained continuously in possession until the property was destroyed by fire, which occurred on the 18th of August, 1889. Prior to the fire, and about the 22d of July, 1889, one Casper Lauer contracted with Mrs. Roth for the purchase of her interest in the property.  He paid Mrs. Roth $175 in cash and executed a note for $100, dated July 22, 1889, due in forty days, payable to her.  This note and the bond that Mrs. Roth had for a deed were deposited with one E. J. Potts, with instructions to deliver the bond to Lauer if he paid the note, and if the note was not paid "it was no sale," as Mr. Potts expresses it, and he was to deliver the bond back to Mrs. Roth. Bethel and Roth would not assign the bond until the note was paid.  The note was never paid, but it and the bond were in the possession of Potts at the time of the fire.  Mrs. Roth remained all this time in possession of the property.  The

appellant company is not charged with notice of this transaction between Mrs. Roth, Lauer and Potts. Potts, as a witness, produced the note and the bond. On the note was indorsed, "I sign the within over without any recourse back on John Barrett. (Signed) Mary A. Roth."

Appellant contends that this indorsement was placed there before the fire, but the preponderance of the evidence shows that after the fire Barrett paid Mrs. Roth $75 for her interest in the note and that she then made this assignment.

It was expressly provided in the policy that it should become null and void, " * * * if the property insured shall hereafter become mortgaged or incumbered, * * * or in case any change shall take place in title or possession of the property herein named, or if the assured shall not be the sole and unconditional owner in fee of the said property;" and the policy further provided that in case of loss the assured should, within fifteen days, give the company written notice, and within sixty days thereafter render a detailed statement and proofs of the actual cash value at the time of the loss, of any property or articles upon which loss or damage is claimed.

No proofs of loss were furnished, but appellees claim that such proofs were waived by the appellant. In relation to this the facts are, that J. B. Wharton, appellant's adjuster of losses, came to Litchfield to adjust this loss, and persons were agreed upon to make an estimate of the loss and they with the adjuster completed such estimate. The adjuster then told Davis that Mrs. Roth would have to execute proof of loss. The adjuster had a blank form upon which such proofs were to be made, and this he began to read to Mrs. Roth, filling up the blanks by writing in her statement and answer as he proceeded, until the proofs were ready for her signature. When that portion of the blank form for proof of loss, which calls upon the assured for a statement that she was the sole owner of the property was read, the adjuster testifies that Mrs. Roth said she was not the owner and had no interest in the property; that he then put the paper in his pocket and told Davis he would have to send to Chicago to the company and in a few days would have their decision, and he left the proof, unfilled,

with Spruell (the local agent of appellant) subject to orders of the company. The adjuster further testified that about a month after this he went to Mrs. Roth's house and saw her again and that she repeated exactly what she did before— that she had sold her claim and had none against the company. Upon cross-examination the adjuster admitted that Mrs. Roth told him of the transaction with Lauer and that she said she intended to proceed against Lauer for the balance, and that he, as adjuster, based the refusal to pay the loss on the ground that Mrs. Roth had sold her interest in the property.

The appellant claims it has cause for reversal for the four following reasons:

1. There was no proof of loss furnished appellant as provided by the policy.

2. Appellee is estopped by her statement to the agent of appellant, when called on for proof of loss, when she said she was not the owner of the property and had no interest in the property.

3. Variance between the proof and declaration.

4. A change had taken place in the title of the property within the meaning of the policy and therefore rendered it void.

One of the conditions of the policy is that within sixty days after the fire the assured shall render under oath a particular and detailed statement and proof of the actual cash value at the time of the loss of any property upon which loss or damage is claimed. Within the sixty days, an adjuster of the appellant produced a blank form used by the appellant company for such statement or proof, and Mrs. Roth and Davis gave him all the information necessary to be inserted therein. He filled up the blank with such statements in writing, and so far as we can see or are advised, this statement or proof of loss is complete except that it is not signed and sworn to by the assured. It was not fully completed because the printed form required a statement that no person other than Davis and Mrs. Roth had any interest in the property, and Mrs. Roth was not willing to so state because of the transaction with Lauer. The adjuster was fully advised by Mrs. Roth of

that transaction and he testifies that Mrs. Roth said she had no
interest whatever in the property; that he then put the paper
in his pocket and said he would send to the company and
have a decision in a few days, and that he left the proof so
unfilled with Spruell, the local agent of the appellant, subject
to the appellant's order. The adjuster then asked Davis,
in case the company passed on the claim (*i. e.*, allowed it),
whether he wanted the money at once at a discount or in sixty
days. The adjuster testifies that he based his refusal to pay
the claim upon the ground that Mrs. Roth had not an insura-
ble interest at the time of the fire. Thus, the appellant had
in the custody of its agent, subject to its orders, this detailed
statement of everything required in proof of loss except as
to the transaction with Lauer, and that was fully made known
to the adjuster, who told the assured that he would send it to
the office of the company in Chicago and have a decision in a
few days.

The appellees could but conclude that nothing more was
required to be done until the action of the company was made
known to them, and the appellant company was charged with
the duty of taking action and notifying the assured. Not
having done so, and the refusal to pay being placed by the
adjuster and the company upon the ground that the assured
had no insurable interest at the time of the fire, the appellant
can not now be heard to say that proof of loss was not fur-
nished. Such proofs must be deemed waived.

If an insurance company after notice of a loss, and with full
knowledge of the facts, resolves not to pay, and places a
refusal on a distinct ground of non-liability in any event, the
assured is relieved from the duty of furnishing formal proofs
of loss. Williamsburg City Ins. Co. v. Cary, 83 Ill. 453; P.
M. & Fire Ins. Co. v. Whitehill, 25 Ill. 470; German Ins. Co.
v. Gueck, 130 Ill. 345.

Refusal to pay on the ground that the assured had no insur-
able interest in the property at the time of the fire, is a waiver
of proofs of loss. Grange Mill Co. v. Western Assurance Co.,
118 Ill. 396.

A clause in this policy states that only Ducat & Lyon, or

Home Ins. Co. of N. Y. v. Bethel.

Charles L. Currier have power or authority to waive or alter any of the terms or conditions thereof. Therefore, appellant's counsel say that there can be no waiver unless made by or with the consent of the persons so named.

If it were claimed that the appellant company had consented and agreed that proofs of loss were, or would be waived, then there might be force in the position that an adjuster or a local agent of the company could not consent and agree to a waiver, and that to be effectual a waiver must be shown to be the act of those who alone had power to bind the company in that respect. It is not, however, claimed that any one assumed to have power and authority to make, or did agree or consent to the making of a waiver. This waiver is declared and raised by the law as the legal result of acts done and facts proven, and does not need the consent or acquiescence of the appellant or any of its agents.

Nor is the appellee estopped by her statement " that she was not the owner of the property and had no interest in it " as is contended in the second of appellant's reasons for reversal.

To constitute an estoppel, among other things, there must be:

1. A representation concerning material facts.

2. The party to whom it was made must have been ignorant of the truth of the matters. The statement of Mrs. Roth was not a representation of a material fact but was a conclusion as to the effect of what had been done by her in the transaction with Lauer. All the material facts of that transaction had been fully made known to the adjuster and he was not ignorant " of the truth of the matter." People v. Brown, 67 Ill. 437.

There is a variance between the proof and the declaration as alleged in the third reason advanced by the appellant. The declaration avers that the fire occurred July 25, 1889, and that notice was given thereof August 26, 1888, and that the adjuster made an examination of the loss on the 28th of August, 1888.

The proof as to the notice and the acts of the adjuster,

showed the true dates thereof to be in the year 1889 instead of 1888.

In the court below a general objection was made to this evidence, but this particular ground of objection was not pointed out and specifically made known to the court. Had it been it could have been obviated by an amendment of the declaration. The objection can not for the first time be specifically made in this court. Sidwell v. Schumacher, 99 Ill. 426.

We come now to the fourth and only remaining reason upon which the appellant contends that the judgment should be reversed, which is, " A change had taken place in the title of the property within the meaning of the policy and therefore rendered it void."

The special provision of the policy in respect to this question is, " if the property shall hereafter become mortgaged or incumbered * * * or in case any change in title or possession takes place * * * the policy shall be void."

No change in the possession occurred, and as to a change in the title, counsel for appellant say : " Our contention is not that Mrs. Roth alienated the property and thereby parted with all insurable interest in it, but that she incumbered the property within the meaning of the words, ' mortgaged or incumbered ' as used in the policy, and as a sequence a change of title (equitable or legal) took place within the meaning of these words." Aside from this concession it is well settled that an executory contract of sale without change of possession does not constitute a change in, or transfer of the title.

Provisions in policies of insurance that they shall become void if there be a change in the title of the insured property, or if the property be mortgaged or incumbered, are to be strictly construed.

" The party claiming such a forfeiture " it is said in Commercial Ins. Co. v. Spankneble, 52 Ill. 52, "is *stricti juris*, and must bring himself strictly within the clause of forfeiture to defeat the right."

It can not in any correctness of speech be said that the title to this insured property was either "mortgaged or incumbered" by the executory contract of sale.

At the time of the fire Mrs. Roth had outstanding a contract for the sale of the property, but there remained in her an insurable interest which, strictly speaking, was not mortgaged or incumbered, and therefore a right of recovery existed to the extent of her interest and that of the mortgagee, Davis.

Perceiving no error in this record, the judgment must be affirmed.

*Judgment affirmed.*