## Anders E. Anderson v. Porter M. Anderson.

### Gen. Nos. 12,314, 12,315, 12,316, 12,317.

#### CONSOLIDATED FOR HEARING.

1. ALIMONY—*when allowance of, excessive.* An allowance of $80 per month held excessive under the facts of this case.

2. ALIMONY—*when court without jurisdiction to enforce payment of.* The court is without power to enforce an order allowing alimony while the same is pending and undetermined upon appeal.

3. SOLICITOR'S FEES—*when order allowing, erroneous.* An order directing the payment of fees to the solicitor of the wife is erroneous; the allowance should be made directly to the wife.

4. APPEAL—*when becomes pending.* An appeal becomes pending the moment that an appeal bond is executed, approved and filed pursuant to order granting the appeal.

5. APPEAL—*operates as supersedeas.* An appeal operates as a supersedeas to suspend all proceedings in the court in which the judgment or decree was rendered to enforce the judgment or decree appealed from.

6. COMMITMENT FOR CONTEMPT—*how order for, should be framed.* An order committing for contempt if intended by way of punishment should fix a definite time of imprisonment; if intended as a means to compel compliance with an order of court, it should provide for release upon compliance.

Divorce proceeding. Appeals from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the March term, 1905. Reversed. Opinion filed March 1, 1906.

JOHN H. HOGLUND, for appellant; C. STUART BEATTIE, of counsel.

M. L. THACKABERRY, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

These appeals are from orders entered in the same cause. The appeals have been consolidated for hearing on the same record, abstracts and briefs. Porter M. Anderson, the appellee, filed a bill for divorce against her husband, the appellant here, alleging, in substance, the following:

The parties were married December 9, 1902, in the city of Chicago, and lived together as husband and wife until about October 1, 1903, when complainant, becoming convinced of defendant's infidelity, left him. In September, 1903, and at various times since then, defendant committed adultery with one Pearl Jenkins, and rented a flat for her in said city, and about May 1, 1904, went to live with her, and has, since said time, and up to and including September, 1904, continued to live with her in an open state of adultery, and has committed adultery with other lewd and indecent women unknown to complainant. Defendant is the owner of a large amount of real property of the value of to-wit, more than one hundred dollars, and of a large amount of notes, bonds, money on hand, etc., and complainant is poor and without means of support. Defendant, while living with complainant, induced her to sign a great many deeds not having in them a description of property, or the name of a grantee, and she alleges that defendant so did, intending to leave complainant, and for the purpose of defrauding her. Defendant is abundantly able to supply complainant's necessities, but refuses so to do. Complainant prays an injunction to restrain defendant from disposing of his property, for temporary and permanent alimony, and for a divorce, etc. The defendant, November 3, 1904, answered, admitting the marriage, and averring that it was not about October 1, 1903, but about November 15, 1903, that complainant refused longer to live with him. Defendant denies the adultery charged and all the material

allegations of the bill, but the answer not being on oath, we can only treat it on this appeal as a pleading.

November 12, 1904, a motion of the complainant for temporary alimony and for solicitor's fees, *pendente lite,* came on for hearing, in support of which complainant filed her affidavit, averring, in substance, that the allegations of her bill are true, as she verily believes. That defendant has large means, and is abundantly able to support her. That prior to the filing of the bill he agreed to and did pay her $80 per month, in addition to the rent of the premises where she resides. That he now refuses to pay anything, and that she has no means of support of her own, other than that derived from defendant. That while they lived together, before defendant went to Europe he induced her to sign a large number of deeds in blank, conveying property owned by said Anderson, and she believes this was with intent to prevent her having any claim on the property.

Defendant then read in evidence his affidavit averring, in substance, as follows: At the time of the filing of the bill he had not any real property of his own or of any other person in his name, and that no person except complainant then had, or thence hitherto has had, or has or holds any real estate in which he is interested, and all the personal property and choses in action held by him are what is known as trading stock, procured and held by him for purposes of trade and exchange; that his interest therein is merely nominal, and his present means and property of all kinds do not exceed his liabilities $1,000 in value. About the time of his marriage with complainant he caused to be conveyed to her a lot of ground and a comfortable and desirable brick building thereon, at number 3978 Vernon Avenue, Chicago, of the value of $5,000, and from time to time since said marriage he has purchased and given to complainant household furniture of the value of $3,000, articles of clothing and jewelry of the value of $5,000, and a horse and carriage of the value of $600, all free from encumbrance, except a mortgage of $2,000 on said dwelling-house. May 1, 1904, complainant refused to live in said house and, after affiant had expended about $1,000 in extra fittings and furnishings thereof, she

still refused and insisted on affiant procuring for her residence an apartment in a flat building, and then she put divers of her relatives in said dwelling-house rent free, although the same would readily rent for $35 per month, and compelled affiant to furnish her money to pay the general and special taxes and insurance on said dwelling-house, and the interest on said $2,000 mortgage. July 20, 1903, affiant, with complainant's knowledge and consent, visited Europe, and when he left Chicago complainant told him she hoped he would never return. Affiant was absent from Chicago about sixty days, and during his absence complainant procured and converted to her own use $700 of his money. November 15, 1903, complainant refused longer to live or cohabit with affiant, notwithstanding which complainant, by divers threats to procure money or its equivalent from affiant's friends and acquaintances, on affiant's credit, has procured from affiant about $100 monthly since said 15th of November; and, by like threats, she, about May 1, 1904, caused affiant to lease a flat for her use at number 4421 Indiana avenue, Chicago, and to become liable for the rent thereof for one year, at a monthly rental of $52.50, which rent affiant has paid. Complainant is a strong, healthy woman, about twenty-four years old, is an expert in music and other arts, and perfectly able to earn a large sum of money by her unaided labor, which she did before said marriage, and, with the rental of said dwelling-house and the personal property given to her, as aforesaid, has ample means for her support and maintenance pending this suit. The aforesaid expenditures for complainant's use, and compliance with her continuous demands, have entirely exhausted affiant's money and all means or sources from which he can procure money, except his future personal services.

Complainant read in rebuttal her affidavit, in substance as follows: Admits that affiant gave her the dwelling-house, household furniture, clothing and jewelry and horse and carriage mentioned in defendant's affidavit, but avers that their value was no more than as follows: Dwelling-house $3,500; household furniture $2,000; clothing and jewelry $1,500; horse, buggy and harness $340. Says it was at defendant's

suggestion that a flat was rented, because the house needed repairs to make it habitable.  September 29, 1904, defendant handed to affiant a paper, of which the following is a copy:

"Chicago, Ill., September 29, 1904.

I agree to pay Porter M. Anderson ten thousand dollars ($10,000.00) in payments which we will hereafter arrange, and also help her to exchange her present house and lot for a better house in a better neighborhood.

A. E. ANDERSON."

Said dwelling-house is not occupied by affiant's relatives free of rent, but is rented for merely enough to pay the interest on the $2,000 loan.  Denies that she has compelled defendant to pay the taxes on the dwelling-house, or interest on the mortgage, or insurance, or that she procured or converted to her use $700, or any other sum of defendant's money, or that she made threats to procure money or its equivalent from defendant's friends or acquaintances; or that she is an expert in music and other arts, or that either before or since her marriage she earned large sums of money by her unaided labor.  Affiant, on information and belief, says that on or about November 1, 1904, defendant stated that he would pay any amount of alimony sanctioned by his solicitor, and that he asked affiant's solicitor to communicate with Messrs. Hoglund & Beattie, and he would do whatever they said, and, subsequently, affiant's solicitor communicated with Mr. Hoglund, and Hoglund stated to affiant that he would not pay any alimony unless ordered so to do by the court.

November 12, 1904, the court ordered as follows:  "On motion of solicitor for complainant, it is ordered by the court that said defendant, Anders E. Anderson, pay to the complainant the sum of eighty ($80.00) dollars per month, as alimony, eighty ($80.00) dollars to be paid on or before the 15th day of November, 1904, and eighty dollars on the first day of each and every month thereafter, until the further order of this court; and that said defendant pay to the solicitor of complainant, Mr. Thackaberry, the sum of one hundred dollars, for and on account of solicitor's fees."  The de-

fendant, Anders E. Anderson, appealed from the foregoing order and his appeal bond was approved by the court and filed November 16, 1904.

It appears from appellant's affidavit that, in the short time between the marriage of the parties, December 9, 1902, and November, 1904, he gave to appellee real and personal property of the total value of $13,600, less an encumbrance on the dwelling-house of $2,000, or $11,600 in all. Appellee testified that the total value of said real and personal property did not exceed $7,000, less the mortgage, or $5,000. It also appears from appellant's affidavit, and is not denied, that he rented a flat for appellee's residence from about May 1, 1904, till May 1, 1905, at the monthly rental of $52.50, so that November 12, 1904, when the order appealed from was entered, he was liable for at least five months' rent, or six, if the November rent had not then been paid. It is also stated in appellant's affidavit, and not denied, that since November 15, 1903, appellant has been paying appellee the sum of about $100 per month. Also that the house number 3978 Vernon avenue can readily be rented for $35 per month, which is not denied, and which seems probable from appellant's description of the house and from the fact, not denied, that he spent about $1,000 in fitting and furnishing it, after appellee ceased to live in it. Appellee says it is rented, apparently to her relatives, for merely enough to pay the interest on $2,000, the money secured by the mortgage. She does not tell us the rate of interest, but assuming it to be 6 per cent. per annum, the interest is $10 per month, so that appellee practically gives $25 a month to her relatives, whom appellant is under no obligation to support. If the house is good enough, as a residence, for appellee's relatives, it would seem that it ought to be good enough for her. Appellee's affidavits, in respect to appellant's financial ability, are vague and indefinite. In her sworn petition, which does not appear to have been read in evidence, and is not contained in the certificate of evidence, she says: "Said Anders E. Anderson is the owner of a large amount of real property of great value, to-wit: of the value of more than one hundred dollars." This

Anderson v. Anderson.

averment is only significant as indicating her ignorance as to whether appellant owns any real property. Appellant swears positively that he has no interest in any real property. Appellee, in her petition, avers that appellant is the owner of a large amount of personal property, consisting of notes, bonds, money on hand, etc. She does not state that she ever saw any of this alleged personal property, or that it is of any value. Appellant swears that he is not worth $1,000 in excess of his liabilities. Appellee has no children, so far as appears from the record. She does not deny that she is a strong, healthy woman about twenty-four years of age, and she has only herself to support. In the following cases, less temporary alimony was allowed, although the necessities of the wife were greater and the ability of the husband greater than in this case: Umlauf v. Umlauf, 22 Ill. App., 581; Miles v. Miles, 101 ib., 106.

We do not regard the note of September 29, 1904, promising to give appellee $10,000, in payments to be arranged sometime in the future, as of any significance on this appeal. Appellee does not explain under what circumstances, or for what, if any, consideration the promise was made. Alimony is not mentioned in the note, and, if alimony was intended, we think it clear that it was not temporary but permanent alimony. We are of opinion that, in view of the evidence, the allowance of $80 per month is excessive, and that the allowance of $50 per month would be a liberal allowance. The order, in directing "that said defendant pay to the solicitor of complainant, M. L. Thackaberry, the sum of one hundred dollars for and on account of solicitor's fees," is erroneous, and of itself would justify the reversal of the decree. By the statute, money paid to the wife to enable her to maintain her suit, including money for solicitor's fees, is her money, when collected, and she may apply it as may be necessary for maintaining her suit. Anderson v. Steger, 173 Ill., 112, 118, 119; Lynch v. Lynch, 99 Ill. App., 454; Miles v. Miles, ib., 130.

This disposes of the principal appeal, number 12,314.

It appears from the record in general number 12,315, that

December 3, 1904, appellee filed in the cause an affidavit stating, in substance, that appellant had not paid $80 due November 15, 1904, and $80 due December 1, 1904, by the terms of the order of November 12, 1904; on filing which the court entered a rule that appellant show cause why he should not be attached for contempt. December 19, 1904, appellant filed an answer to the rule, alleging, in substance, that the court was without jurisdiction to enter said rule; that December 1, 1904, he paid $52.50 rent for appellee's flat, and should be credited therewith, and that he had no real or personal property or money from which to pay said alimony. Thereupon, the court held the answer insufficient and caused appellant to be attached, and entered the following order: " On motion of solicitor for complainant, it is ordered that whereas said defendant, Anders E. Anderson, has failed to make answer to the rule, to show cause why he should not be punished for failure to pay alimony, as per order of court heretofore entered, that said defendant, Anders E. Anderson, be arrested and confined in the county jail of Cook county, Illinois, until the further order of court, or such time as he shall be released by law. And said defendant is also ordered to pay to the solicitor for the complainant the further sum of fifteen ($15.00) dollars, additional solicitor's fees for attendance."

As heretofore stated, appellant appealed from the order of November 12, 1904, granting temporary alimony, and his appeal bond was approved by the judge of the Superior Court, and was filed in that court November 16, 1904. The moment that appeal bond was executed and filed, the case, in legal contemplation, was pending in this court. Owens v. McKethe, 5 Gilm., 79.

In Reynolds v. Perry, 11 Ill. 534, the court say: " It is not the filing of the record by the appellant which gives this court jurisdiction of an appeal. The case is, in contemplation of law, pending in this court the moment the appeal bond is executed and filed with the clerk of the Circuit Court." See, also, Elgin Lumber Co. v. Langman, 23 Ill. App., 250, 256.

Anderson v. Anderson.

An appeal operates as a supersedeas and suspends all proceedings in the court in which the judgment or decree was rendered, to enforce the judgment or decree appealed from. *Ex parte* Thatcher, 2 Gilm., 167; Ambrose v. Weed, 11 Ill., 488; People v. Prendergast, 117 ib., 588, 596; Heyman v. Heyman, Nat. Corp. R., Vol. 29, p. 734. Such being the law of this State, the court was without jurisdiction to enforce the order of November 12, 1904, by contempt proceedings or otherwise, and the judgment committing appellant to the county jail is invalid.

There can be no question that the order of November 12, 1904, is appealable, and if the lower court could enforce that order pending an appeal, the appeal would be a mere farce. Even though the court had had jurisdiction, we would have to hold the order invalid in other respects. It orders the payment to complainant's solicitor of $15 as solicitor's fees, and in this respect is invalid. If the order of commitment was intended as punishment, it should have fixed a definite time of imprisonment; and if it was intended as a means to compel payment of the alimony awarded, it should have provided for appellant's release, on payment of the alimony. Dolese & Shepard Co. v. Schultz, 101 Ill. App., 567, and cases cited. The order for imprisonment is, " till the further order of the court, or such time as he shall be released by law," which seems to make appellant's imprisonment depend on the discretion of the court, or a resort to the writ of *habeas corpus.*

January 3, 1904, and February 15, 1905, appellee filed affidavits stating, in substance, that no part of the order of November 12, 1904, granting alimony, had been complied with, and similar contempt proceedings were had on each of said affidavits as in general number 12,315, *supra,* and January 9, 1905, the court entered an order adjudging appellant guilty of contempt, and that he be confined in the county jail " until he is released therefrom by order of court or due process of law." And February 15, 1905, the court entered another similar order, committing appellant to the county jail. The appellant appealed from each of the two orders

last mentioned, the appeals being numbered, respectively, 12,316 and 12,317.

The objections being the same in these appeals as in general number 12,315, the decisions must be the same. The decree in the appeal general number 12,314, and the judgment in each of the appeals general numbers 12,315, 12,316 and 12,317 will be reversed.

*Reversed.*