American Ins. Co. of Newark, N. J. v. Keefer, 208 Ill. App. 571.

plaintiff and defendant for the sale by plaintiff of defendant's property and that plaintiff brought about the sale in controversy, which was a sharply disputed question in the case, *held* erroneous, in an action to recover a commission on the sale.

2. INSTRUCTIONS, § 12*—*necessity of definiteness.* An instruction which was very indefinite, uncertain and might mislead the jury should not be given.

3. INSTRUCTIONS, § 88*—*when instruction on determination of preponderance of evidence is erroneous.* An instruction upon the determination of the preponderance of the evidence, undertaking to enumerate the elements to be considered and omitting the element of the number of the witnesses, and also the element as to the candor and fairness or lack thereof of the witnesses, *held* erroneous, notwithstanding the witnesses were equal in number, as the number differed on some points.

---

## American Insurance Company of Newark, New Jersey, Appellee, v. Ida B. Keefer, Appellant.

## Gen. No. 6,465.

1. JUDGMENT, § 323*—*what proof necessary to justify setting aside in equity.* To justify a court of equity in setting aside a judgment because the return of service of the summons is untrue, the proof must be clear and convincing.

2. PROCESS, § 85*—*what proof is insufficient to overcome return of service of summons.* Where the return of service of the summons is made by an officer whose duty it is to serve the writ, it will not be set aside on the testimony alone of the person alleged to have been served.

3. PROCESS, § 85*—*when ex parte affidavit of officer does not impeach other testimony as to service of summons and return.* An *ex parte* affidavit executed by a former deputy sheriff in another State a year after leaving the State as to the manner in which he had served a certain summons and made return of service thereof did not impeach his later testimony based upon a memorandum made by him at the time of making such service and return and discovered by him after making the affidavit, in a suit to set aside the judgment rendered upon such summons and return.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

American Ins. Co. of Newark, N. J. v. Keefer, 208 Ill. App. 571.

4. PROCESS, § 85*—*what does not impeach testimony of officer as to making return of summons.* The testimony by an office deputy sheriff that he had, by direction of the deputy sheriff making the service of a summons, made the return of the summons thereon for the latter, did not impeach the latter's testimony that he had himself made the return, as it was immaterial whether he wrote the return personally or through the office deputy.

5. INSURANCE, § 456*—*what constitutes waiver of time limit for filing proofs of loss.* The announcement by an insurance company to the beneficiary of a policy issued by it within 6 months after a loss that it does not intend to pay the loss is a waiver of a requirement of the policy that proof of loss must be furnished by a beneficiary within 6 months.

6. JUDGMENT, § 318*—*when evidence is insufficient to warrant vacation of.* Evidence *held* insufficient to vacate a judgment for recovery of a loss under an insurance policy where the only defenses, in a suit to set aside the judgment, were technical.

Appeal from the Circuit Court of Peoria county; the Hon. CLYDE E. STONE, Judge, presiding. Heard in this court at the October term, 1917. Reversed. Opinion filed October 16, 1917. Rehearing denied November 22, 1917.

CAMERON & CAMERON, for appellant.

MILES & FULLER, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Ida B. Keefer brought a suit at law in the Peoria Circuit Court against the American Insurance Company of Newark, New Jersey, hereinafter called the company, upon a policy of fire insurance. Summons was issued and returned served in proper form upon Fred Jay, agent of said company. Plaintiff waited about a year for defendant to appear and afterwards a default was entered and proofs were heard and there was a judgment for plaintiff for $761.10, and costs. Thereafter the company began this suit by filing a bill in equity against Mrs. Keefer to have the judgment vacated and leave given the company to de-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

fend in the suit at law, that relief being asked on the ground that the summons was not, in fact, served upon Jay, its agent. The bill set up two grounds of defense to the policy. The bill was answered and the cause was referred to a master to take and report the proofs and his conclusions. He reported the proofs and his conclusions favorable to the company, objections and exceptions thereto were overruled, and there was a decree vacating the judgment, setting aside the default, and giving the company leave to plead. Mrs. Keefer appeals from that decree. Appellant has omitted most of the evidence, except that relating to the service of the summons.

The law is well settled that to justify a court of equity in setting aside a judgment because the return of service of the summons is untrue the proof must be clear and convincing, and that when such return is made by an officer whose duty it is to serve the writ it will not be set aside on the testimony alone of the person alleged to have been served. The return here in question shows service upon the company by leaving a true and correct copy thereof with Fred Jay, the agent of said company, its president not being found in Peoria county. The return is dated June 4, 1914, and is signed "Francis G. Minor, sheriff, by W. L. Hayward, Deputy." Jay was the agent of the company at Elmwood in Peoria county, and the president was not in the county, and Hayward was a deputy sheriff. Jay testified, denying that he was served with a copy of the summons. Each question put to him by the company's solicitor was specially limited to asking if he was served with a copy of the summons in that suit. His replies were limited to that question. Under the authorities the return could not be defeated by his evidence. Hayward testified that he did serve it by delivering a copy to Jay; that he left Peoria at 7 a. m. on June 4, 1914, on a

574    APPELLATE COURTS OF ILLINOIS.

American Ins. Co. of Newark, N. J. v. Keefer, 208 Ill. App. 571.

train for Elmwood and carried with him this summons and a copy thereof, which had been compared in the office before he left; that he had known Jay for many years; that he saw him going up a stairs, and went up to what he supposed was Jay's office, and there told Jay he had a summons for him as agent for the insurance company, and that Jay said, "You need not read it to me; I know what it is," and he then delivered to Jay a copy and came away and returned to Peoria by the next train, and on that day filled out and signed the return in the sheriff's office. His testimony is sought to be impeached by certain other things. Before this controversy arose Hayward had removed to Omaha, and after this judgment had been taken he received a letter from an agent of the company in Omaha asking him to come to his office, and Hayward went there on January 13, 1916, and, after a conversation with that agent, the latter prepared and Hayward signed and swore to an affidavit that he served said summons upon said company by reading the same to Fred Jay as its agent and not in any other way, and that he distinctly remembered reading it to Jay because he knew Mrs. Keefer and Jay, and knew of this fire, and that he did not deliver a copy of the summons to Jay or to any other person. Hayward admitted making this affidavit, but said that about a week afterwards he came across a memorandum made by him in a little book, and that he then recalled the circumstances and remembered that he did deliver a copy of the summons to Jay, and that his affidavit was incorrect. He testified that whenever he left the sheriff's office with papers to serve he made a memorandum of what he was to do, sometimes in one or the other of two memorandum books which he had, and sometimes on a piece of paper; that when he made the entry in a memorandum book he drew lead pencil marks across it at the end of the day, if he had done the work indicated. He produced a memo-

randum book which had on it the figures: "6/4—1914," and which gave the amount of the fare to Elmwood, and which also read: "Served Fred D. Jay by copy." Across the entire entry were two lead pencil marks in the form of a letter "X." He testified that he made this memorandum that morning before he started for Elmwood, and that he put the pencil mark upon the entry after he had done the work and returned to Peoria, on the same day. He testified that it was finding this memorandum in this book about a week after he made his affidavit that first refreshed his recollection, but that at the time of testifying he distinctly remembered the circumstance of delivering this copy of the summons to Jay in the office of the latter in Elmwood on the day in question. The full name of Jay was Fred D. Jay. This evidence is criticised by the company because he remained deputy sheriff over 6 months after the date in question and there was no later entry of this kind in that book, and hardly any earlier entry relating to the service of summons. He, however, testified that he had another book in which he made like entries and that he also often made them on a piece of paper, which paper he destroyed after he returned from performing the official duty required. Hayward is supposed to be impeached by another fact. While he testified that he filled out and signed the return himself on his return from Elmwood that day, Edward S. Ryan, the sheriff's office deputy, testified that he filled out and signed the return himself. One or the other of them is mistaken. We do not see that it makes any difference which is correct. Ryan says he wrote the return by direction of Hayward and it is immaterial whether Hayward wrote it personally or through Ryan. When Hayward made this affidavit in Omaha he did not have present the summons and his return, and it does not appear that he was told what that return showed, and it is apparent that he did not remember it. He

had been out of office over a year and evidently did not recollect how the statutes of Illinois required such a summons to be served. We presume every deputy sheriff serves many more subpœnas by reading than he does summonses by copy. When questioned *ex parte* in a foreign State how he served a particular writ a year before in Illinois, he might easily fail to remember correctly the manner of service. We are unable to say that the circumstances above narrated impeach the testimony of Hayward, but if they do, and his testimony is rejected, it leaves only the evidence of Jay to overcome the return, and the authorities are clear that his evidence alone cannot defeat it. The stability of judicial proceedings would be greatly impaired if the evidence of a person alleged to have been served could overcome the official return made by a sworn officer in performance of his official duties. Appellant has not raised the question whether a public officer will be permitted to testify in contradiction of his official return, and we do not decide that question.

Some other things should be noted. Hayward always has claimed that he served that summons on Jay that day in Jay's office, the only variance between his affidavit and his testimony being that in the former he said he only read it to Jay. Care was taken not to ask Jay whether the summons was read to him. If it was only read to him, his knowledge of the suit thus obtained was the knowledge of the company. It averred in its bill that it did not know of the suit at law until a few days before this bill was filed, but, if this summons was read to Jay, the company through him knew of it a year and a quarter before it filed the bill.

The bill set up two defenses: (1) A failure of Mrs. Keefer to furnish proofs of loss within 6 months as required by the policy; and (2) that the building was

insured as a dwelling and when burned was occupied as a hotel, which was a greater risk, for which it charged a higher rate, and under the terms of the policy that made it void. There is a letter in evidence from the insurance company to the attorneys for Mrs. Keefer before the expiration of said 6 months, which plainly indicated that it did not intend to pay the loss, and such an announcement waives proofs of loss. *Williamsburg City Fire Ins. Co. v. Cary,* 83 Ill. 453; *Grange Mill Co. v. Western Assur. Co.,* 118 Ill. 396; *Rostetter v. American Ins. Co.,* 184 Ill. App. 157. The house was situated in the Village of Brimfield in Peoria county, and it may well be questioned whether calling a dwelling house a hotel in a small village necessarily increases the risk or changes its character. The proposed defenses therefore were technical.

From a careful perusal of the evidence we are of opinion that the company was not entitled to have the judgment vacated. The decree is therefore reversed.

*Reversed.*