Gaty et al. *v.* Casey et al.

SAMUEL GATY et al., Plaintiffs in Error, *v.* THOMAS J. CASEY et al., Defendants in Error.

ERROR TO ADAMS.

It is the use of the materials furnished, and the putting of them into the building, and attaching them to the freehold, which entitles the party to a lien, to the extent of the value of them.

Gaty et al. *v.* Casey et al.

And if such materials become severed from the freehold by fire, the lien is not thereby destroyed.

A court of equity will treat the money derived from the sale of property upon which there is a mechanics' lien, as it would the property before a sale, and will pursue it into the hands of the party who has converted the property into money.

IN May, 1849, Gaty, McCune, and Glasby, filed their bill for a lien, against Thomas J. Casey and others, setting forth that on the 24th day of July, 1848, they sold to Casey, in St. Louis, Missouri, two large steam-boilers and fire gauge cocks, to be used by said Casey in repairing the machinery belonging to a mill, in the county of Adams, State of Illinois, owned and occupied by said Casey; the said Casey agreeing to pay $978.05, which boiler and gauge cocks were used by said Casey in repairing said mill. The bill further sets forth, that before said mill had been conveyed absolutely to said Casey, the former owner had incumbered it to a large amount, by deeds of trust. The persons owning these incumbrances were made parties to the bill.

In February, 1850, N. Bushnell, one of the defendants, in his capacity as trustee in said deeds of trust, filed his answer setting forth in detail said several deeds of trust, and that Samuel H. Kennedy and Joseph W. Foster, as partners, had purchased an interest in said deed of trust, and should be made parties, and further setting forth that the time for the payment of the debt secured by said deed of trust expired on the 16th day of July, 1848.

At the October term, 1850, the complainants filed a supplemental petition, setting forth that since the filing of the original bill, the mill had been sold under said deed of trust, and purchased by Foster for the benefit of said Kennedy & Foster; and that since said sale, and in the month of January, 1850, the buildings on said premises were destroyed by fire, being insured at the time for $9,000, which sum was received by said Foster from the insurance companies. This supplemental bill further sets forth, that the said boilers and gauge cocks were saved from said fire, slightly injured, and afterwards sold by said Foster, for said firm of Kennedy & Foster, being at the time subject to the lien of complainants, of which Kennedy & Foster had notice. This bill makes Kennedy & Foster parties, and prays a decree that they pay over the amount received by them on the sale of the boilers.

To this bill Bushnell and Kennedy filed an answer, again setting forth in detail the said incumbrances on said property, and the purchase of said property by said Foster, under the deed of

Gaty et al. *v.* Casey et al.

trust, setting forth said deed to Foster; and further insisting, that said incumbrances were paramount to the lien of the complainants, and greatly exceeded in amount the value of said property.

Foster died, and his death was suggested on the record.

The cause came on to a hearing at the April term, 1853, upon the original and supplemental bill, answers of Bushnell and Kennedy, and replication thereto, and upon deposition and oral proof.

The deposition of Webster proves the sale of the boilers to be used in repairing said mill, as alleged in said bill.

The complainants further proved, that the mill was burned in January, 1850 ; that the boilers were saved and afterwards sold by Kennedy & Foster, in cash, for $625, of which $300 was left in the hands of N. Bushnell, to abide the event of this suit, and be paid over according to the decree of the court.

The defendants then proved that these boilers were placed in the mill, in place of some old boilers taken out, which old boilers were worth $250.

The defendants then proved the existence of the prior incumbrances on the property, as alleged in the answer of Bushnell, and that these incumbrances exceeded the value of the property, and that the property had been purchased by Kennedy & Foster on the sale under the deed of trust.

The court made a decree dismissing the bill as to all the defendants except Casey, and the complainants appealed.

This cause was heard before O. C. SKINNER, Judge, at the March term, 1853, of the Adams Circuit Court.

WILLIAMS & LAWRENCE, for plaintiffs in error.

BROWNING & BUSHNELL, for defendants in error.

CATON, J. This is a bill to enforce a mechanics' lien under our statute. The complainants, in St. Louis, sold to Casey some steam-boilers and gauge cocks, for the purpose of repairing a mill in Adams county, in this State, which Casey put into the mill. Previous to the time Casey had purchased the mill property, his grantees had incumbered it by certain deeds of trust, to secure a large amount of money. . Under these deeds the trustees sold and conveyed the property to Foster, who purchased for himself and Kennedy. Afterwards, the mill burned down, and the boilers were saved and but little damaged, and were sold by Foster & Kennedy for $625, three hundred dollars of which were left in the hands of the defendant Bushnell, to

abide the event of this suit, according to the decree of the court.

The first objection taken is, that as the contract was made out of the State, no lien can arise under our statute, which cannot operate extraterritorially. It is not the contract which creates the lien under the statute, but it is the use of the material furnished upon the premises, the putting of them into the building, and attaching them to the freehold, which entitles the party furnishing the materials to a lien upon the premises, to the extent of their value. This objection is not well taken.

The complainants, then, were entitled to a lien for the materials which they furnished, and which were put into the mill. The twentieth section determines the rights as between the party furnishing the materials, and the previous incumbrance. That section provides that " no incumbrance upon land created before or after the making of a contract under the provisions of this chapter, shall operate upon the building erected, or materials furnished, until the lien in favor of the person doing the work, or furnishing the materials, shall have been satisfied; and upon questions arising between previous incumbrancers and creditors under the provisions of this chapter, the previous incumbrance shall be preferred to the extent of the value of the land at the time of making the contract, and the court shall ascertain, by jury or otherwise, as the case may require, what proportion of the proceeds of any sale shall be paid to the several parties in interest." This statute declares in express terms, that the deed of trust which had been previously executed, and which was an incumbrance upon the premises, could not operate upon the steam-boilers and stopcocks which had been furnished by the complainant. If the previous incumbrance could not operate upon these materials, then a sale under the deed of trust could convey no title to them to the purchaser; or if any title was conveyed, it was subject to the prior lien of the complainants to have their debt first paid out of the proceeds derived from the sale of them. If this was the condition of the property while it was attached to the freehold, and formed a part of the mill, that condition was not changed by the severance from the freehold, by means of the fire. That could not and ought not to destroy the lien of the complainants upon the materials, and vest in the purchasers under the deed of trust a perfect and unincumbered title, when they had no such title before. They, however, assumed to exercise such title, and sold those materials after they were thus severed for cash, thus putting them entirely beyond the reach of the court. But a court of equity will not allow its justice to be thus defeated. Whenever it is necessary

it will treat the money as it would the property, and follow it into the hands of the party who has converted the property into money.    This is one of the most familiar principles by which courts of equity have ever been governed, and this we think is a proper case for its exercise.    Had the property not been sold, but remained upon the premises, the prior lien of the complainants upon it to the extent of its value, would be undoubted, and the court could not hesitate to enforce it.    It having been sold and converted into money, in violation of this prior right of the complainants, the only relief which the court can grant, is to award them the money which was realized from the sale of the property.    A court of equity cannot allow rights to be thus destroyed by the wrongful act of one who is substantially claiming to have converted the property of another into money which he may claim as his own.

The decree of the circuit court must be reversed, and the suit remanded.

*Decree reversed.*