ANNE G. PADDOCK *et al.*

*v.*

ATLAS S. STOUT *et al.*

*Filed at Ottawa September 26, 1887.*

1. MECHANIC'S LIEN—*character of proceeding to enforce the same.* A bill or petition to enforce a mechanic's lien is a chancery proceeding, and is not strictly a proceeding *in rem.*

2. SAME—*to what premises the lien will attach.* A mechanic's lien for work and material for a mill upon a lot will not extend to and embrace lots across a street not appurtenant to the mill property. The fact that a corn-crib had been built upon such other lots for storing corn to be ground in the mill, or because a shed may have been located on them where the delivery horses and wagons of the mill sometimes stood, will not affect the question.

3. SAME—*from what time the lien attaches—subsequent destruction of the building.* The lien given by the statute to a mechanic or material-man for work done or materials furnished in the erection or repair of a building, will attach from the date of the contract, and such lien will not be affected by the subsequent destruction of the building by fire.

4. SAME—*time for completion of the work—a contract construed.* On June 30, 1883, the owners of mill property entered into a contract with a mill-wright to remodel and change their mill into a roller mill, the latter to furnish materials, for which the owners were to pay $6600, as follows: $2500 on July 10, and a like sum when the mill was "finished and started to satisfactory results," and the balance of $1600 in six, nine and twelve months, for which notes were to be given, bearing seven per cent interest. The contract provided that the mill was to be completed and started in successful running order by September 15, 1883: *Held,* that the time when the work was to be completed and the time when the mill was to be started in running order, were one and the same time, and when the owners agreed to pay the balance of $1600 by giving their notes, payable in "six, nine and twelve months from the date of starting the mill," they agreed to give notes payable in six, nine and twelve months from the date of completing the work.

5. SAME—*time of performance—waiver—and herein, of an extension of the time.* Where the owner of a building allows the contractor, who has engaged to remodel and repair the same, to proceed with the work after the time fixed for its completion, and, on completion, accepts the work, and makes payments and gives his notes for the balance due on the contract, this will amount to a waiver of the time of performance fixed by the contract.

6. A mere extension of the time of performance of a contract does away with none of the stipulations of the contract, and an agreement to extend the time waives nothing more than the time of performance.

7. Where suit is brought for the enforcement of a mechanic's lien within six months of the time when the last payment is required to be made by the terms of the original contract, a subsequent incumbrancer can not object that the time for the performance of the work had been extended, as he can not be injured thereby.

8. SAME—*time of payment—subsequent extension.* The third section of the Mechanic's Lien law, which provides that where the contract is expressed no lien shall be created if the time of payment is fixed beyond one year from the time stipulated for the completion of the work or the furnishing of materials, relates to the original contract. The lien depends upon the provision which the contract makes as to the time of payment, and not upon the notes which may afterward be given.

9. So when a contract for work on a mill, and the supply of materials therefor, provides that the owner shall give a note for a part of the contract price, payable in twelve months after the completion of the work, this will amount to a contract to pay in one year from the time fixed for the completion of the work; and the fact that after the note shall be given the maker will have three days of grace in which to pay it, makes no difference. The terms of the contract will not be enlarged by a subsequent extension of time for the payment of the note.

10. SAME—*taking promissory note for the price—whether a waiver of the lien.* A mechanic or material-man, by taking the note of the owner of the property, who incurred the debt, will not thereby waive his lien. Such a note merely serves to liquidate the demand.

11. SAME—*assignment for benefit of creditors by owner, and proving claim before the assignee—effect upon the lien.* The circuit court is not divested of its jurisdiction to enforce a mechanic's lien by the voluntary assignment of the owner of the property, subject to the lien, for the benefit of creditors. All that the assignee takes is the equity of redemption.

12. A party holding a mechanic's lien on the property of his debtor does not lose the same by proving his debt against the assignee of his debtor under a voluntary assignment for creditors, and receiving a dividend, but the amount of such dividend is to be applied as a credit on his demand, *pro tanto.*

13. INSOLVENT DEBTOR'S ACT—*jurisdiction in chancery to enforce a mechanic's lien.* The remedy by bill or petition in chancery, under the Lien law, for the enforcement of a mechanic's lien, will not be defeated by a subsequent voluntary assignment by the debtor for the benefit of creditors.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Bureau county; the Hon. DORRANCE DIBELL, Judge, presiding.

Messrs. SKINNER BROS., for the appellants:

A mechanic's lien, given by statute, is in derogation of the common law, is secret in its nature, and the statute should therefore receive a strict construction. *Brady* v. *Anderson*, 34 Ill. 110.

The lien should not be extended to cases falling within the reason, but not provided for by the language, of the statute. It is opposed to common right, and should be strictly construed. *Brady* v. *Anderson*, 24 Ill. 110; *Stephens* v. *Holmes*, 64 id. 336.

The statute which gives a mechanic a lien is in derogation of the common law, and must be strictly construed, and no person can obtain a lien under it unless a clear compliance is shown with the provisions of the statute. *Canisius* v. *Merrill*, 65 Ill. 67; *Carney* v. *Tully*, 74 id. 375; *Belanger* v. *Hersey*, 90 id. 70.

Mortgagees, and others acquiring interests in property against which a mechanic's lien is sought to be enforced, have a right to call for strict proof of all that is essential to the creation of the lien. *Davis* v. *Alvord*, 94 U. S. 545.

In this statutory proceeding the appellants can not divide their claim, and institute separate and distinct suits to enforce liens as the notes respectively become due. Had they taken notes on longer time than stipulated in the contract, they could not maintain a petition for a mechanic's lien until the last note was due. *Cox* v. *Keiser*, 15 Bradw. 432.

The last note of twelve months, having three days of grace, was not due within one year. Edwards on Bills, secs. 517, 518; *Bank* v. *Wager*, 2 Cow. 712; *Reese* v. *Mitchell*, 41 Ill. 365; *Arnold* v. *Stock*, 81 id. 407; *Coffin* v. *Lorin*, 5 Allen, 153.

After the assignment for the benefit of creditors, all the property of the assignor is in the custody of the law and under the sole jurisdiction of the county court. *Freydendall* v. *Baldwin*, 103 Ill. 325; *Mersinger* v. *Yager*, 16 Bradw. 260; *Colby* v. *O'Donnell*, 17 Bradw. 474; *Hanchett* v. *Waterbury*, 115 Ill. 220.

"The appearing and proving their claim in the county court gave that court jurisdiction over their persons, and they were thereafter bound, at their own peril, to take notice of all orders made by it affecting the fund for distribution, or their rights as distributees." *Field* v. *Ridgely*, 116 Ill. 424.

In proceedings in bankruptcy, the Federal courts hold that a secured creditor who proves his claim without reference to his lien or security, and without apprising the bankrupt court of its existence, thereby waives his lien and relinquishes it to the assignee. *Stewart* v. *Isador*, 5 Abb. Pr. 68; *In re Bloss*, 4 Bank. Reg. 157; *In re Stansell*, 6 id. 183; *In re Granger & Sabine*, 8 id. 30; *In re Jaycox & Green*, 8 id. 241; *Hoadley* v. *Cawood*, 40 Ind. 239; *Briggs* v. *Stephens*, 7 L. R. 281.

Mr. Robert Farwell, for the appellees:

The lien attaches from the time of making the contract. Secs. 2, 17, 21, of chapter relating to liens; *Clark* v. *Morse*, 64 Ill. 279; *Thielman* v. *Carr*, 75 id. 385.

The lien is not affected by the burning of the mill. *Gaty* v. *Casey*, 15 Ill. 198.

Nor by the fact the contract was not completed in the time stipulated, if there is a waiver as to the time of performance. *Nibbe* v. *Braulm*, 24 Ill. 279; *Eyster* v. *Parrott*, 83 id. 517.

The circuit court has jurisdiction of all causes of law and equity. (Const. art. 6, sec. 12.) The county court has not general chancery jurisdiction.

Sower Bros. could only assign what they had,—the equity of redemption,—and that was all the assignee took. *Colburn* v. *Shay*, 17 Bradw. 292.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a petition for a mechanic's lien filed on March 13, 1885, in the circuit court of Bureau county, by appellees Stout, Mills and Temple of Dayton, Ohio, against Sower Bros., Eliza J. Skinner and the appellants Anne G. Paddock, George S. Skinner and Eugene C. Bates, assignee. Default was entered against Daniel, Eliza, George and Morris Sower, composing the firm of Sower Bros. Eliza J. Skinner filed a disclaimer. Eugene C. Bates, assignee of Sower Bros., answered, and Anne G. Paddock and George S. Skinner filed their joint and several answer, and, subsequently, an amendment thereto. The petitioners filed replications. After hearing, the circuit court dismissed the petition for want of jurisdiction. Upon appeal to the Appellate Court the latter court reversed the decree of the circuit court and rendered judgment against the appellants there for costs. The case is brought here by appeal from the Appellate Court.

Sower Bros. owned a flour and feed mill and the lot, on which the same was situated, in Princeton in Bureau county. The building stood upon lot 29 in Stoner's addition to Princeton. Sower Bros. also owned parts of lots 7 and 8 in subdivision of lot 13 of Stoner's first addition to said town.

The petition alleges, that on June 30, 1883, appellees and Sower Bros. made a written agreement, by which appellees were to remodel and change the mill of Sower Bros. into a roller mill, were to furnish all the material, mill-wright work and complete the mill, were to have the right to use all the old shafting, gearing, pulleys, etc., all the machinery and mill furnishings and work to be first-class, appellees guaranteeing that the mill should do as good work in yield and quality of flour as any roller mill from same quality of wheat; the mill to be completed and started in successful running order by September 15, 1883, for $6600; that Sower Bros. were to pay $2500 July 10, 1883, and $2500 "when the mill is fin-

ished and started to satisfactory results," and, to use the exact words of the contract, "the balance of $1600 Sower Bros. agree to give their notes bearing seven per cent interest payable in equal payments of six, nine and twelve months from date of starting of mill;" that Sower Bros. were to take out all the old machinery and put the building in proper shape to receive the new work, and send such old machinery as might be necessary to the shop of appellees in Dayton, Ohio, to be refitted, and to pay all freight and deliver the machinery in the mill; that appellees have done the work and furnished the materials and performed the contract; that Sower Bros. have paid the $5000 and failed to pay the $1600; that there was delay in completing the work, for which appellees were not responsible; that Sower Bros. permitted the work to go on after September 15, 1883, and accepted the same on October 14 or 15, 1883, when it was completed and the mill was started; that the $1600 should have been due and payable in six, nine and twelve months from October 15, 1883, and that the installments are all now due; that Sower Bros. made their three notes for the $1600, dated November 1, 1883, and payable in six, nine and twelve months from that date; that, in April, 1884, the mill was destroyed by fire; Sower Bros. became insolvent and made an assignment for the benefit of creditors to Eugene C. Bates, who has taken possession of the property under the assignment, and converted a pair of scales (built partly on lot 29 and partly in the street) and the iron or remains of the machinery into money; the petition prays for a lien upon the lots and the money in the assignee's hands.

The answers aver, that on July 2, 1883, Sower Bros. made a trust deed to George S. Skinner upon lot 29 with appurtenances and the mill building to secure certain notes to Anne G. Paddock and Eliza J. Skinner, which trust deed was recorded July 7, 1883; that more than $1000 are due Paddock upon her notes; that the notes for $1600 were turned over by appellees to the assignee, and that the latter paid appellees a

dividend thereon before the petition was filed; that appellees did not perform contract and are entitled to no lien; that appellees were responsible for delay; that machinery and mill were not first-class and did not do good work; that the time stipulated in the contract for payment for the work and materials was beyond one year from the time stipulated for the completion thereof, etc.

Paddock and Skinner, in an amendment to their joint and several answers, set up the assignment to Bates, dated April 26, 1884, and recorded on that day in the recorder's office of Bureau county and in the county clerk's office, the filing of the inventory including this property by the assignee on April 30, 1884, and claim that the county court obtained jurisdiction before this petition was filed on March 13, 1885.

The first objection, made by appellants to the enforcement of the lien in this case, is that the work was not completed by September 15, 1883, as required by the terms of the contract, and that the delay in its completion was the fault of the appellees here, the petitioners in the court below. Looking at it as a mere question of fact, we think the weight of the evidence is in favor of the position that appellees were not at fault in this regard. Sower Bros. were to take the old machinery out of the mill and send it to appellees at Dayton, Ohio, to be refitted. Three witnesses swear, that the delay was caused by the failure of Sower Bros. to ship this old machinery to Dayton. The last shipment of it was not made from Princeton until September 15, 1883, and was not received at the freight depot in Dayton until September 20, 1883.

But it makes no particular difference under the facts of this case whether the delay was the fault of Sower Bros. or of the appellees. Sower Bros. permitted appellees to proceed with the work after September 15, 1883, and accepted the work when it was finished a month later on October 15, 1883. They also made partial payments of the $5000 after September 15, 1883. A payment of $521.06 was made on December

17, 1883, and another of $521.07 on January 16, 1884. After the default, they also gave their notes for the $1600. Under the decisions of this court, these circumstances amounted to a waiver of the time of performance fixed by the contract. "A mere extension of time of performance does away with none of the stipulations—an agreement to extend the time waives nothing more than the time of performance." *Nibbe* v. *Brauhn,* 24 Ill. 268; *Eyster* v. *Parrott,* 83 id. 517.

The next objection urged against the existence of the lien is that the time of payment is extended beyond one year from the time stipulated in the contract for the completion of the work. The third section of the Lien law (Hurd's Rev. Stat. 1885, chap. 82) provides, that "when the contract is expressed, no lien shall be created under this act if the time stipulated for the completion of the work or furnishing materials is beyond three years from the commencement thereof, or the time of payment beyond one year from the time stipulated for the completion thereof." The contract here is expressed and is in writing. By its terms the mill was "to be put up and started in successful running order" by September 15, 1883. The second sum of $2500 was to be paid "when the mill is finished and started to successful and satisfactory results." It is plain from this language, that the time when the mill was to be finished, or, in other words, when the work was to be completed, and the time when the mill was to be started, were one and the same. The mill was to be finished and to be started in running order at the same time. Therefore, when Sower Bros. agreed to pay the balance of $1600 by giving "their notes bearing seven per cent interest payable in equal payments of six, nine and twelve months from date of starting of mill," they agreed to give notes payable in six, nine and twelve months from date of completing the work.

But appellants claim, that the note to be made payable in twelve months would be entitled to three days of grace, and that, therefore, the time of payment, by the contract, was *one*

*year and three days* from the time stipulated for the completion of the work. The contract itself must, by its terms, provide for a time of payment, which shall not be beyond one year from the completion of the work. The question is not whether the parties do or do not agree, after the execution of the contract, to an extension of the time for performance. The question is as to the terms of the contract. The lien depends upon the provision which the contract makes as to the time of payment. *Cook* v. *Vreeland,* 21 Ill. 431; *Beasley* v. *Webster,* 64 id. 458; *Cook* v. *Heald,* 21 id. 425; *Belanger* v. *Hersey,* 90 id. 70.

By the contract in this case, Sower Bros. agree to give a note for one-third of the $1600 "payable in twelve months from date of starting of mill." The time of payment as thus fixed is just one year from the time stipulated for the completion of the work, and not more than one year therefrom. The fact that, after the note should be given, the maker would be entitled to have three days of grace, in which to pay it, makes no difference. The terms of the contract are not enlarged by the subsequent extension of time for the payment of the note, and we think that those terms conform to the requirement of the statute.

Whether or not the notes were taken in discharge of the lien was matter of defence. Appellants charge in their answer, that they were so taken. There is no proof, however, that the notes for the $1600 were taken in absolute payment of the debt. By taking the note of the owner of the premises, who incurred the debt, the petitioner does not waive his lien. Such a note merely serves to liquidate the demand. *Van Court* v. *Bushnell,* 21 Ill. 624; *Brady* v. *Anderson,* 24 id. 110; *Meeks* v. *Sims,* 84 id. 422.

The bill in this case offers to surrender the notes to the makers, and, on the trial, the offer was repeated in open court.

The appellants, Paddock and Skinner, are incumbrancers. Whether the last payment is regarded as having become due

and payable on September 15, 1884, or on October 15, 1884, this petition, having been filed on March 13, 1885, was filed within the six months after the last payment, as required by section 28 of the Lien law. Appellants have, therefore, suffered no injury from any arrangement for the extension of time. *Brown* v. *Moore*, 26 Ill. 421.

As above stated, the building, in which the machinery was placed by appellees, stood upon lot 29. Lots 7 and 8 were separated from lot 29 by a street thirty feet wide. They were not appurtenant to it, merely because a corn crib had been built on them for storing corn that was to be ground in the mill, or because a shed was located on them where the delivery horses and wagons of the mill sometimes stood. No part of the mill structure was on lots 7 and 8 or touched them. (*Parmelee* v. *Hambleton*, 19 Ill. 615; *Tracy* v. *Rogers*, 69 id. 662.) Hence, the lien of the appellees did not extend to lots 7 and 8, as the Appellate Court very properly held.

The next point made by appellants is that the circuit court had no jurisdiction to entertain this proceeding for the reason that the jurisdiction of the county court, as is claimed, had already attached. Before this petition was filed, Sower Bros. had made their assignment to Bates; the assignee had filed his inventory and given notice to creditors, etc. It also appears that the appellees had filed their claim with the assignee and had received from him, on February 6, 1885, a dividend of $197.58. It is claimed that they thereby submitted themselves and their rights to the jurisdiction of the county court. We are of the opinion that the circuit court had jurisdiction in the premises.

The lien of the appellees attached at the date of the contract, to-wit: on June 30, 1883. When they agreed to furnish and did furnish the machinery and place it in the mill, their claim for the price became a lien upon the property from the time of making the contract. (*Clark et al.* v. *Moore et al.* 64 Ill. 273.) It, therefore, had priority over the trust deed of appellants,

which was not made until July 2, 1883, nor recorded until July 7, 1883.  (*Thielman et al. v. Carr et al.* 75 Ill. 385.)   Nor was the lien of appellees affected by the burning of the mill. It attached to the money realized from the sale of the remains of the machinery just as it did to the mill and machinery before the fire.   *Gaty et al. v. Casey et al.* 15 Ill. 189.

It follows, that, when the deed of assignment was afterwards made on April 26, 1884, the mill property passed to the assignee subject to the existing liens of the material-men and of the mortgagees.    The lien of the appellees was not assigned to the assignee; it existed before the rights of the assignee accrued.    All that passed to him was the equity of redemption. Having the right under the statute to enforce their lien in the circuit court as soon as their debt matured, appellees could not be deprived of that right because the owners of the equity of redemption had made an assignment.

The machinery for the enforcement of a mechanic's lien is the creation of the statute.    It has all the elements of a chancery proceeding.    Section 4 provides that the lien may be enforced by a bill or petition.   Section 5 directs what that bill or petition must state.    Section 6 provides for the issuance of a summons "as in suits in chancery."    Section 7 specifies the mode of giving notice to non-resident defendants "as provided in suits in chancery."    Section 8 directs that suits instituted under the act "shall be placed upon the chancery docket and stand for trial as other suits in chancery."    Section 28 provides that no creditor shall enforce the lien as against any other creditor or incumbrancer or purchaser, unless suit be instituted within six months after the last payment shall have become due and payable.    All persons, claiming an interest in the property and against whom a priority of lien is claimed, must be made parties.   (*Dunphy* v. *Riddle,* 86 Ill. 22.)    To establish the lien as superior to that of a trust deed, not only the trustee, but the *cestui que trust* must be a party to the proceeding.   (*Clark* v. *Manning,* 95 Ill. 580.)    The court enter-

taining the petition must adjust the equities between the liens given by the act and the liens of other incumbrancers. Hence the proceeding is a chancery proceeding and not strictly *in rem*. *Dunphy* v. *Riddle, supra.*

The county court has no such chancery jurisdiction as is here indicated. None such is conferred by the act in regard to assignments for the benefit of creditors. The latter act provides no machinery for furnishing such relief or such adjustment of conflicting rights, as the Lien law makes provision for.

The cases of *Freydendall* v. *Baldwin*, 103 Ill. 325, *Hanchett* v. *Waterbury*, 115 id. 220, *Field* v. *Ridgely*, 116 id. 424, and *Farwell* v. *Crandall*, 120 id. 70, have no application to the case at bar. Those cases expressly state, that there may be "special circumstances" under which courts of equity will intervene to entertain the jurisdiction there decided to be in the county courts.

The fact that appellees received a dividend upon their notes from the assignee can have no other effect than to require the amount of such dividend to be applied as a credit in fixing the sum decreed to be due in the lien suit.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*