## W. T. RAWLEIGH MEDICAL COMPANY *v.* VAN WINKLE ET AL.

[No. 9,477.    Filed February 28, 1918.]

1. SALES.—*Sale of Goods.—Contract.—Construction.*—Where a seller of drugs and medicines was obligated by the contract of sale to instruct and advise the buyer, who purchased for resale, as to the best methods of selling the goods, and in pursuance to such agreement mailed to the buyer booklets and letters suggesting that he leave samples with prospective purchasers, to be finally purchased and paid for only in event that they proved satisfactory, the buyer could not escape liability for samples so delivered and not paid for, in the absence of anything in either the booklets or the letters, or in the contract, indicating that the buyer should be excused from payment for such articles.  p. 27.

2. SALES.—*Sale of Goods.—Right to Return.*—Where defendant, who purchased drugs and medicines from plaintiff under a contract not authorizing their return, sent back a quantity of unsold goods at the direction of one representing himself to be plaintiff's traveling auditor, but did not list them on certain inventory blanks as required by plaintiff's custom in such cases, and plaintiff informed defendant that it refused to receive the goods back for that reason and that it would not do so unless they were properly inventoried on blanks furnished for that purpose and the freight paid, defendant, having failed to comply with the conditions imposed by plaintiff, cannot avoid liability for the articles so returned on plaintiff's refusal to accept the same.  pp. 29, 31.

3. PRINCIPAL AND AGENT.—*Authority of Agent.—Proof.—Declara-*

*tions.*—The authority of an agent cannot be proved by his declarations alone.　p. 30.

4.　SALES.—*Contract.*—*Construction.*—A provision of a contract for the sale of goods, payment of which was secured by written guaranty, that the seller did not obligate itself to honor the buyer's orders for goods, if his account was at any time in an unsatisfactory condition, was for the benefit of the seller, and not the buyer or his guarantors.　p. 31.

From Johnson Circuit Court; *William E. Deupree,* Judge.

Action by the W. T. Rawleigh Medical Company against Robert Van Winkle and others.　From a judgment for defendants, the plaintiff appeals.　*Reversed.*

*Hall & Pell,* for appellant.
*Miller & White,* for appellees.

CALDWELL, J.—Appellant, a corporation of Freeport, Illinois, brought this action against appellee Robert VanWinkle, and his coappellees, William F. McCord, Jonathan Allen and Frank VanWinkle, to recover for goods sold and delivered to appellee Robert VanWinkle under a certain written contract executed by him and appellant on November 20, 1908, the performance of which by Robert VanWinkle was guaranteed by his coappellees in writing indorsed on the contract.　A trial resulted in a verdict and judgment in favor of appellees.

The sole error assigned is the overruling of the motion for a new trial, under which assignment the sufficiency of the evidence is challenged.　To determine the sufficiency of the evidence requires an outline of the issues.　The contract and guaranty are exhibited with the complaint.　The former is in substance as follows: That Robert desired to purchase of appellant at wholesale prices, on credit, to sell to consumers at retail prices fixed by appellant, medi-

cines, stock foods, etc. Robert agreed to pay for the goods by remitting to appellant weekly one-half of his receipts, and to make payment in full within a reasonable time after the termination of the contract for any cause. Appellant agreed to fill all reasonable orders made by Robert for goods, and to deliver such goods on board cars at Freeport, Illinois, provided his account was in satisfactory condition, and to furnish to him free of charge a reasonable amount of advertising matter, report and order blanks, and to give him free of charge, after he began work, instructions and advice through letters, bulletins and booklets, as to the best methods of selling the goods to consumers. The contract specified that it was to be in force only so long as Robert's account and the amount of his purchases were satisfactory to appellant, and that Robert or his guarantors might be released from the contract at any time by paying in cash the balance due appellant on the account. A bill of particulars filed with the complaint discloses an account stated under date of December 30, 1911, amounting to $1,488.92, and goods thereafter purchased from time to time up to March 12, 1913, aggregating $887.73, or a total of $2,376.65, with credits of weekly payments between January 1, 1912, and October 9, 1913, aggregating $1,476.95, leaving a net balance due appellant of $899.70.

Appellee Robert VanWinkle answered in four paragraphs: First, general denial. Second, in substance that the account sued on was composed of two items: First, of goods received from appellant with directions to deliver them to prospective customers as samples, and not to be paid for if they proved to be worthless; that they did prove to be worthless and were not paid for; second, goods amounting to $131.32

which were returned to appellant by its direction, and which were received and accepted by appellant. The third paragraph was to the effect that the goods sued for were worthless; the fourth paragraph, payment.

The other appellees answered in five paragraphs: First, general denial; second, practically the same as Robert's third; third and fifth, that the goods sued for were delivered to Robert under a new contract made without the knowledge or consent of such appellees, by the terms of which Robert was required to and did deliver such goods to prospective customers as free samples, and not to be paid for, and that such customers did not pay for them; fourth, that in violation of the written contract between appellant and Robert, the former sold to the latter the goods sued for when his account was not in a satisfactory condition.

Appellant introduced evidence making a *prima facie* case, to the effect that it sold and delivered goods to Robert from time to time after the execution 1. of the written contract, and under its terms, and that Robert made weekly payments thereunder, and that on January 1, 1912, the balance due on Robert's account after deducting all weekly payments was $1,488.92. Under date of January 2, 1912, Robert acknowledged in writing over his signature that such balance was correct. That thereafter from time to time the appellant sold and delivered to Robert goods amounting to $887.73, the last sale having been made on March 12, 1913; that the contract between the parties was terminated September 27, 1913, and that after January 4, 1912, Robert made weekly payments on his account amounting to $1,476.95, the last payment having been made October 9, 1913, and the balance due being $899.70.

There was no evidence that any part of the sum sued for had been paid. There was some evidence that of the goods sued for about $16 worth at the retail price, or $8 worth at the wholesale price, was of no value. There was no other evidence in support of the answer of no consideration. The evidence offered in support of Robert's second paragraph of answer, and the third and fifth paragraphs filed by the other appellees was to the following effect: As a preliminary, it will be remembered that the written contract obligated appellant to instruct and advise Robert free of charge, by means of letters, bulletins and booklets, as to the best methods of selling to consumers the products which he purchased of appellant. After Robert commenced business, appellant at various times between August, 1909, and September, 1911, mailed to him circular letters on the general subject of urging him to speed up his sales, and suggesting as a wise plan that experience had proved to be most effective that he leave samples of certain medicines and other products with prospective purchasers to be tried, and to be finally purchased and paid for only in case such medicines and other products proved to be satisfactory. Booklets were introduced in evidence also containing advice and suggestions of the same general nature. These letters and booklets were mailed to Robert by appellant in discharge of its agreement to do so, as contained in the written contract. They are plain and unambiguous in their terms, and it is within the province of this court to construe them. We find nothing in them that tends to prove that goods which Robert was advised to deliver to prospective customers as samples, and as above indicated, were not intended to be paid for by them. Neither do we find in such advice

and suggestions any element of a new contract between appellant and Robert. On the contrary, such advice and suggestions were given and made pursuant to an obligation of the written contract to that effect.

The evidence disclosed that Robert shipped back to appellant goods of the value of $131.32. The facts were as follows:. There was nothing in the original contract that authorized Robert to return to appellant any goods purchased and received by him under the contract, and nothing obligating appellant to receive any such goods if so returned. Robert testified that a Mr. Salsman called on him in June, 1913, and represented that he was a traveling auditor of appellant, and directed him to reship to appellant certain unsold goods; that some of such goods had been returned to Robert by purchasers as unsatisfactory, but what portion thereof had been so returned Robert was unable to say; that he kept such goods until in February, 1914, and then crated them carefully and shipped them to appellant. Appellant refused to receive them. There was evidence that it was appellant's custom in dealing with its customers to receive back, and credit such customers with the value of any unsold goods so returned, on certain conditions which were set out in certain inventory blanks, among such conditions being that such customers were required to prepay the freight and certain charges of unpacking, checking up, etc., and that the goods must be in good condition, and that the goods so returned must be listed on such inventory blanks, and a copy of the list mailed to appellant. There was no evidence that Robert had any knowledge of such custom unless he received it from such inventory blanks, copies of which appellant claimed to have mailed to him both before and

after he shipped such goods back to appellant, but which Robert denied that he had received. Robert in returning the goods listed them on a different sort of blank not containing such conditions, one copy of which he mailed to appellant. Under date of February 18, 1914, appellant mailed a letter to Robert acknowledging the receipt of a bill of lading for goods so returned, and notifying him that if he desired appellant to accept such goods they must be properly listed on inventory blanks, copies of which the letter stated were inclosed, and that he must prepay the freight, etc., and that if he desired the goods to be accepted, he must act promptly. By letter dated March 11, 1914, appellant acknowledged the receipt of a list of the goods made out on an order blank rather than an inventory blank, and in addition repeated substantially the statements contained in the letter of February 18. These letters informed Robert that the goods were in the possession of the railroad company, and had not been received or accepted by appellant, and that appellant would not accept or receive them unless Robert complied with the conditions on which appellant under its custom of doing business accepted returned goods. Robert received such letters in due course, but ignored them. As we have said, the written contract did not authorize Robert to return goods, and did not obligate appellant to accept them if returned. The evidence was not sufficient to justify him in returning the goods pursuant to the direction of Mr. Salsman. There was no proper evidence to show that Mr. Salsman was the agent or representative of appellant. It is true that there was evidence that he stated to Robert that he was a traveling auditor of appellant, but agency can-

not be proved by the declarations of the agent
2.    alone.   *Johnston Harvester Co.* v. *Bartley*
(1882), 81 Ind. 406.   There was no evidence
that appellant learned that Salsman had directed the
goods to be returned, and no evidence that it ratified
any such direction by accepting them or otherwise.
Appellant planted itself on its custom that governed
in the return of goods, and Robert, although afforded
abundant opportunity to do so, failed and refused to
comply with such custom.   The evidence, therefore,
was not sufficient to entitle Robert to credit for the
value of the goods which he attempted to return.

Respecting the fourth paragraph of answer filed by
the appellee other than Robert, such paragraph was
predicated, as we have said, on a certain pro-
4.    vision of the written contract to the effect that
appellant did not obligate itself to honor Rob-
ert's orders for goods, if his account at any particular
time was in an unsatisfactory condition.   While we
believe that this provision of the contract was inserted
for the benefit of appellant rather than appellee, it
may be said further that a careful investigation of the
evidence as set out in the briefs fails to disclose that
any goods were sold or delivered to Robert after
appellant had made any statement that his account
was in an unsatisfactory condition, if such a state-
ment was made.

There was other evidence which in a general way
bears upon the question of the sufficiency of the evi-
dence to sustain the verdict.   Thus, as we have said,
appellant made its last shipment of goods to Robert
on March 12, 1913.   Under the respective dates of
September 28 and October 25, 1912, and April 28 and
May 15, 1913, he wrote letters to appellant on the
general subject of his desire to continue in the busi-

ness, and declaring his purpose to pay and discharge his account as rapidly as possible, in none of which did he express any dissatisfaction with reference to the state of his account. He wrote to the same effect under date of September 30, 1913, after appellant had terminated his contract, expressing his desire to continue in the business, and requesting that he might be permitted to do so by sending cash with each order. Without expressing any opinion as to the amount of Robert's unpaid account as disclosed by the evidence, we conclude that the evidence was insufficient to sustain the verdict. Other questions presented are not considered or decided, as they are not likely to arise on a retrial.

Judgment is reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 118 N. E. 834. See under (2) 35 Cyc 254.