## HOLLAND ET AL. v. FARRIER.

[No. 10,570. Filed April 20, 1921.]

1. APPEAL.—*Review.*—*Findings.*— *Evidence.*— *Sufficiency.*— The court on appeal will sustain a finding of fact if there is any evidence to support it. p. 372.

2. MECHANICS' LIENS.—*Materials Furnished.*—*Title to Land in Name of Third Person.*—*Duty of Materialman.*—Where a materialman furnished materials to be used in repairing a building on the order of one not the owner of the land, the fact that the title to the realty was not in the name of the occupant who ordered the materials was sufficient to put the materialman on inquiry as to the occupant's rights. p. 373.

3. PRINCIPAL AND AGENT.—*Proof of Agency.*—*Declarations of Agent.*—Agency cannot be proved by the declarations of the agent alone. p. 373.

4. MECHANICS' LIENS.—*Materials Furnished on Order of Tenant.*—*Action to Foreclose Lien.*—*Agency of Tenant.*—*Evidence.*—*Sufficiency.*—In an action to foreclose a mechanic's lien on a hotel property for materials ordered by the occupant and used in repairs and for the building of a garage, evidence *held* to show that the occupant was a mere tenant, and insufficient to show that he had authority from the owners to order the materials in their behalf. p. 373.

5. MECHANICS' LIENS.—*Building Erected by Lessee.*—*Right to Mechanic's Lien.*— *Statute.*— Under §8296 Burns 1914, Acts 1909 p. 295, a mechanic's lien may be had on a building erected by a tenant on leased land. p. 375.

6. MECHANICS' LIENS.—*Building Erected by Tenant.*—*Destruction of Building.*—*Lien for Materials.*—Where one occupying a hotel as a tenant, but who contemplated buying the property, bought material used in repairs and for the erection of a garage, *held* that, where the garage was wrecked by a windstorm, the materialman, although not entitled to a lien on the realty, was entitled to a lien on the material saved from the wreckage. pp. 375, 376.

7. MECHANICS' LIENS.—*Right to Lien.*—*Consent of Owner.*—In order that a lien may attach to real estate for material used in a building erected thereon, it is necessary that such material should be furnished by the authority and direction of the owner, and something more than mere inactive consent on the part of the owner is necessary. p. 376.

8. MECHANICS' LIENS.—*Lien for Materials.*—*Building on Land Held Under Contract to Purchase.*—*Right to Lien.*—A person in possession of real estate under a contract of purchase can-

not defeat or cloud the vendor's title by suffering a mechanic's lien to be filed against such real estate for improvements made thereon by him. p. 376.

From Marshall Circuit Court; *Smith N. Stevens,* Judge.

Action by James O. Farrier against William Holland and others. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*Arthur L. Gilliom, E. M. Morris, A. G. Graham* and *George Crane,* for appellants.

*L. M. Lauer, John W. Kitch* and *W. O. Osborn,* for appellee.

McMAHAN, J.—Appellee filed his complaint in two paragraphs to foreclose a mechanic's lien on certain real estate. Later a third paragraph was filed alleging that appellants, Holland and McInerny, were the owners of certain real estate; that appellant Dreschel was in possession of the same and claimed some interest therein; that appellee at the special instance and request of appellants furnished them certain materials of the value of $800 for the repair of a hotel and boathouse, and for the construction of a garage on said real estate; that within the sixty days allowed by law, appellee filed his notice of intention to hold a mechanic's lien; that the garage was thereafter destroyed and wrecked by a windstorm after which Holland and McInerny sold lumber and materials which were saved from the wrecked garage, and had the money which they received therefor in their possession; that by reason of said facts, appellee could not foreclose his lien against said garage and demanding a judgment and all other proper relief.

The court found the facts specially and stated its conclusions of law thereon, to each of which appellants excepted. Their motion for a new trial being overruled, judgment was rendered according to the conclusions.

Appellants' main contention is that the finding of the court is not sustained by the evidence. The undisputed evidence is that Dreschel learned that the real estate known as Arlington Hotel, a summer resort at Lake Maxinkuckee, and being the property described in the complaint, was for sale. He secured a price from the owner, after which he talked with Holland and McInerny about buying it. After an investigation, they purchased it believing it would be a good investment whether Dreschel took it off their hands or not, although they expected to sell it to him, not for a profit but as an accommodation to him. Dreschel did not have the money to pay for it. He wanted to buy it and pay in installments but did not know what amount he would be able to pay each year. After Holland and McInerny purchased the hotel he entered into an oral agreement with them, whereby he was to take possession of it, and run it for one season. He agreed to pay the taxes for that year, the cost of the insurance, and seven per cent. interest on $7,250, that being the amount they had paid for the property. At the end of the first season he was to determine what installments he could pay, and a written contract was then to be entered into for the sale of it to him. In accordance with this oral agreement, Dreschel went into possession, paid for and took out in the name of Holland and McInerny, $5,000 fire insurance on the hotel. He also paid the taxes, but never paid the interest. He purchased materials from appellee of the value of $800.01 of which $150 worth was used in repairing the hotel and boathouse. The balance was used in constructing a garage on part of land across the road from the hotel.

Appellee charged all the material so sold and used to Dreschel, who at different times made payments on the account aggregating $311.39. In October 1917, he went to appellee's office to see about settling the account.

Appellee then informed him that he would accept a bankable note. He made out a note for the balance which he gave to Dreschel, who took it saying he would see about getting security and would return it by mail. The note was returned without any security, after which appellee went to South Bend where all the appellants resided, taking the note with him, and informed Dreschel if he would get Holland and McInerny to sign the note it would be all right. Appellee had no conversation with Holland and McInerny prior to this time. They never said anything to him and he never said anything to them about selling or furnishing the material to Dreschel. He did not charge the account to them, never sent them a statement or made a demand that they pay it. Appellee testified that when Dreschel first spoke to him about furnishing the material he said, he was acting for the other appellants. Dreschel, however, denied making this statement. Appellee before furnishing the material learned from Dreschel and from an examination of the records that the title of the property was in Holland and McInerny. He never asked Dreschel what, if any, interest he had in the property.

The hotel was destroyed by fire August 12, 1917, after which Dreschel remained in possession of the property four or five days when he delivered possession to Holland and McInerny, who later collected the insurance money amounting to $3,200. About two months after the hotel burned, the garage was blown down by a windstorm. In April 1918, McInerny sold his interest to Holland, who in turn sold the material saved from the garage, receiving therefor between $90 and $100. There is evidence from which the court might have found that Holland was at the hotel two or three times during the summer and knew that the hotel and boathouse had been repaired and that the garage had been built, and that

McInerny was at the hotel once before any repair work was done.

The court in its finding after stating the facts relating to the purchase of the property by Holland and McInerny and the oral agreement between them and Dreschel, found that: All of said agreement was with the understanding that in the management and control of said property during the first year Dreschel was the agent of Holland and McInerny, and they knew he was holding himself out as their agent and never denied that fact, they knew he was erecting a garage on the real estate and that he had not paid them anything except the insurance and the taxes under their agreement; that when Dreschel gave the order for the materials he told appellee that he was acting as agent for Holland and McInerny and wanted all bills with load tickets so he might turn them in to the company at South Bend. All of said materials were charged to Holland and McInerny; that Holland and McInerny knew Dreschel was repairing the hotel and boathouse and knew he was constructing a garage, and that in all of said transactions with appellee, Dreschel was acting as agent for Holland and McInerny and in no other capacity.

Appellants' main contention is that there is no evidence tending to support the finding of the court relative to agency. While it is our duty to sustain the finding of the court when there is any evidence to support such finding, it is also our duty when there is no evidence to support a finding to act accordingly. We have carefully examined the record in this case and find no evidence tending to prove that Dreschel was the agent of Holland and McInerny in purchasing the materials from appellee. The only evidence upon this subject was given by appellee's son who testified, that on one occasion when Dreschel was talking about buying the material, he said Holland and

McInerny had purchased the hotel property and that he, acting as agent, had come down to see about it and that they were going to run the hotel there; and that he mentioned different parts that needed repair, did not say anything about the garage, but afterwards he said they were going to try and build one. This, with the fact that Holland and McInerny were at the lake and saw the property as set out in our statement of the evidence, constitutes the whole of the evidence relative to agency.

Appellee, knowing that the title to the real estate was in the name of Holland and McInerny, was put upon inquiry as to Dreschel's rights. *Hankinson* v. *Vantine* (1897), 152 N. Y. 20, 46 N. E. 292. He knew Dreschel was in possession of it and was operating the hotel as a summer resort. He made no inquiry of Dreschel as to what right or interest he had in the property or what agreement, if any, he had with the owners. He never saw either of the owners or made any inquiry of them relative to the matter. They neither said nor did anything to mislead him or to cause him to believe that Dreschel was their agent. He, according to his own statement, relied entirely upon what Dreschel told him. But agency cannot be proved by the declaration of the agent alone (*W. T. Rawleigh Medical Co.* v. *Van Winkle* [1918], 67 Ind. App. 24, 118 N. E. 834) and when the statement of Dreschel is eliminated, nothing remains to support the finding of agency.

Appellee charged all the materials on his books to Dreschel, as was testified to by appellee's son and manager. Dreschel paid all that was ever paid on the account and as before stated he went to appellee's office in October to see about settling the account, and was informed by appellee that he would accept a bankable note. Appellee at that time made out

a note which he gave Dreschel, who took it saying he would see about getting security and would return it by mail. And we might ask, Why the suggestion about Dreschel getting security, unless the parties at that time understood that Dreschel was the debtor?

It is clear that the negotiation between Dreschel on the one hand, and Holland and McInerny on the other, never reached the stage where it can be said there was even an oral agreement for the sale of the property to Dreschel. The only thing they had agreed upon was the price for which Holland and McInerny would sell it. No terms had been agreed upon. It was the understanding of all the parties that he could have it for $7,250 to be paid in installments. The amount of the installments, or when they were to be paid, or the rate of interest was not agreed upon. He did not enter into possession as a purchaser. He desired to operate the hotel one season in order to ascertain in a general way what he could make, so that he would know how much he could pay each year. During the first year he was to pay the taxes and the insurance on the property and pay seven per cent. on the investment. He took possession, paid the taxes and insurance. He paid nothing on the purchase price. He was, in fact, as the court correctly found paying for the use and occupation of the property. In other words he was paying a rental for the first year, which under the law made him a tenant.

Recurring to the statement in the special finding that the arrangement was with the understanding that Dreschel was the agent of Holland and McInerny. Appellants insist that this is not a statement of a fact but a conclusion of law. As we read the evidence it makes no difference whether it is a statement of a fact or a conclusion of law. If it is the statement of a fact, it is not supported by the evidence. If it is a conclusion

of law, it has no place in the finding of facts and must be ignored.

We cannot do otherwise than hold that the court erred in overruling the motion for a new trial, for the reason that the finding is not sustained by the evidence.

Having held that Dreschel was a tenant of Holland and McInerny, let us now see whether appellee had a lien upon the material saved from the wrecked garage.

Appellants admit, and rightly so, that where a tenant erects a building on leased land, a mechanic's lien may be had on the building. Section 8296 Burns 1914, Acts 1909 p. 295, provides for such a lien and on a foreclosure of such lien authorizes the removal of such building by the purchaser at the foreclosure sale. Appellee had a lien on the garage. What, if any, right had he in the material saved from the wrecked building? Did the wrecking of the building destroy his lien? The destruction of a building by fire does not destroy the lien, where material is sold to and used by the owner of the land for the purpose of erecting a building thereon. *Smith* v. *Newbaur* (1896), 144 Ind. 95, 42 N. E. 40, 1094, 33 L. R. A. 685; *Bratton* v. *Ralph* (1896), 14 Ind. App. 153, 42 N. E. 644. Where a building has been erected on leased land by a tenant; a materialman, may by complying with the statute, have a lien upon the property to the full extent of the tenant's interest. *McAnally* v. *Glidden* (1902), 30 Ind. App. 22, 65 N. E. 291.

Prior to the windstorm, appellants' interest in the garage was subject to the lien of appellee, and the fact that the building was blown down by the storm cannot and ought not destroy the lien and vest in appellants a perfect and unincumbered title, when they had no such title before. As stated in 17 R. C. L. 599, §5, "Liens whether by contract of the parties or by operation of law, are of too sacred a character

to be divested or even impaired by vague and uncertain implications. Both policy and morality require that they should be sustained whenever it may be done without a violation of positive law."

In order that a lien may attach to real estate for material used in a building erected thereon, it is necessary that such material should be furnished by the authority and directions of the owner, and something more than the mere inactive consent on the part of such owner is necessary in order that such lien may be acquired against him. It is well settled in this state that a person in possession of real estate under a contract of purchase cannot defeat or cloud the vendor's title by suffering a mechanic's lien to be filed against such real estate for improvements made thereon by him. *Toner* v. *Whybrew* (1912), 50 Ind. App. 387, 98 N. E. 450.

There are cases, however, holding that where the vendor has been active and instrumental in having the improvements made the lien will attach to the real estate where the vendee failed to carry out his contract of purchase. *Rader* v. *A. J. Barrett Co.* (1915), 59 Ind. App. 27, 108 N. E. 883.

Phillips, Mechanics' Liens (3d ed.) §79, in discussing this question says: "A general agency to take care of property, or an agency for other purposes, will not be sufficient. In this there is no hardship, as the title being on record, the mechanic is chargeable with notice that the agent is not the owner, and having that notice while dealing with a person not having the title or being clothed with the evidences of title, he should ascertain the source and extent of the authority before contracting, and failing to do so, he should bear the consequences of his negligence. Merely proving that a party is agent for some purpose will not be sufficient, nor proof that he was in possession of the property. A party in pos-

session of property of another by contract may bind his own interest, but not that of the owner, in the premises, unless the authority to do so has been conferred. Nor will the mere fact that a party is in possession prove authority."

We know of no reason why these rules are not applicable to a tenant as well as to one in possession under a contract of purchase.

In *Gaty* v. *Casey* (1853), 15 Ill. 189, Gaty sold Casey two steam boilers to be used in repairing the machinery in a mill owned by Casey. Pending an action to foreclose a mechanic's lien, the mill was destroyed by fire and the boilers being saved, were afterwards sold by one Foster who had purchased the property under a trust deed which had been given by Casey's grantor. A supplemental complaint was filed setting out these facts. It was held that under the statute then in force, that the trust deed could not operate upon the boilers and that any title that might be conveyed under such deed was subject to Gaty's lien. In discussing the rights of the parties and the equity of the case, the court said:

"If this was the condition of the property while it was attached to the freehold, and formed a part of the mill, that condition was not changed by the severance from the freehold, by means of the fire. That could not and ought not to destroy the lien of the complainants upon the materials, and vest in the purchasers under the deed of trust a perfect and unincumbered title, when they had no such title before. They, however, assumed to exercise such title, and sold those materials after they were thus severed, for cash, thus putting them entirely beyond the reach of the court. But a court of equity will not allow its justice to be thus defeated. Whenever it is necessary it will treat the money as it would the property, and follow it into the hands of the party who has converted the property into money.

This is one of the most familiar principles by which courts of equity have ever been governed, and this we think is a proper case for its exercise. Had the property not been sold, but remained upon the premises, the prior lien of the complainants upon it to the extent of its value would be undoubted, and the court could not hesitate to enforce it. It having been sold and converted into money in violation of this prior right of the complainants, the only relief which the court will grant is to award them the money which was realized from the sale of the property. A court of equity cannot allow rights to be thus destroyed by the wrongful act of one who is substantially claiming to have converted the property of another into money which he may claim as his own."

In *Ellett* v. *Tyler* (1866), 41 Ill. 449, it was held, that a purchaser of a house from the owner, pending a proceeding to enforce a mechanic's lien created for its erection, will take the title subject to the lien which may be established in the proceedings. And if such purchaser sells the house to another, and induces him to remove it to another lot, the money thus received became, in equity, a trust fund liable to discharge the lien.

In *Elgin Lumber Co.* v. *Langman and Utman* (1887), 23 Ill. App. 250, the court, after citing *Gaty* v. *Casey, supra,* said: "This decision sufficiently indicates the rule to be that where the property to which the statutory lien attached has been converted into money, the court will, in a proper case, and for the benefit of the holders of the lien, treat the money as substitute for the property."

So in *Paddock* v. *Stout* (1887), 121 Ill. 571, 13 N. E. 182, where a mill upon which Stout had a mechanic's lien was destroyed by fire, it was held that the burning of the mill in no way affected the lien upon the mill

property, and that the lien attached to the money realized from the sale of the remains of the machinery, just as it did to the mill and machinery before the fire.

*McLaughlin* v. *Green* (1873), 48 Miss. 175, is also a case where the building had been destroyed by fire and it was there held that since McLaughlin had a lien on the building for his labor, he had a right to have his lien satisfied out of the bricks and iron remaining after the buildings were destroyed, by subjecting the bricks, iron, and the remains of the building to execution on his judgment.

The same principle is recognized in *Smith* v. *Newbaur*, *supra*, at page 105, where the court in quoting from Phillips, Mechanic's Lien §304a says: "If the lien is once fixed on the realty, it clings to the land after the destruction of the building. Moreover, the lien attaches to the money on the sale of the land and the remnants of the mill and machinery."

And again in *Totten & Hogg Iron, etc., Co.* v. *Muncie Nail Co.* (1897), 148 Ind. 372, 47 N. E. 703, the court, quoting from 15 Am. and Eng. Ency. Law, 112, said: "The money derived from the sale of property upon which there is a mechanic's lien will be treated by a court of equity, as it would treat the property before the sale; and such court will follow it into the hands of the party who has converted the property into money."

The court concluded as a matter of law that appellee was entitled to a personal judgment against all three appellants for $527.43 plus $50 attorneys' fees, that he had a lien upon the real estate to the extent of appellants' interests therein, and that this lien should be foreclosed. In this, the court erred. Appellee, under the evidence, was entitled to a personal judgment against Dreschel for the full amount of his claim and a decree against Holland to the effect that the money which he

received from the sale of the material saved from the wrecked garage is a trust fund, and requiring the same to be paid into the court within a time to be fixed by the court or on failure so to pay such sum into court for the use of appellee that execution issue.    Appellee is not, however, entitled to a decree foreclosing the lien as to the interest of Holland and McInerny in the real estate.    Judgment reversed, with directions to grant a new trial and for further proceedings not inconsistent with this opinion.