CAITO ET AL. *v.* FISHMAN ET AL.

[No. 11,495. Filed June 19, 1923. Rehearing denied October 25, 1923.]

SALES.—*Contract.*—*Principal and Agent.*—*Mechanics' Lien.*—*Evidence.*—*Sufficiency.*—In a proceedings to foreclose a mechanics' lien for materials furnished, evidence, *held* sufficient to establish that the contract was between the owner of a garage and the plaintiffs, notwithstanding the negotiation for the construction had been principally by the defendant's son, who was a tenant.

From Marion Superior Court (A12,502); *Linn D. Hay,* Judge.

Action by Emil Fishman and another against Philip Caito and others. From the judgment rendered, the defendants appeal. *Affirmed.*

*Hurst H. Sargent,* for appellants.

*Frank C. Groninger, Taylor E. Groninger* and *Ella M. Groninger,* for appellee.

McMAHAN, C. J.—Appellants Philip and Michela Caito are husband and wife and owners by entireties of certain real estate in the city of Indianapolis, on which there are located two residences and a large ga-

rage. Appellants reside in one of said houses and their son Gus Caito resides in the other.

Appellees Fishman and Fishman furnished and installed a steam heating plant in the garage. They also installed steam radiators in the house occupied by the son and by an underground pipe connected them with the heating plant in the garage. Appellee Indianapolis Mortar and Fuel Company furnished certain materials to Fishman and Fishman which were used in the installation of the heating plant. Fishman and Fishman hereafter referred to as appellees filed their complaint against Philip and Michela Caito, hereafter designated as appellants, and also against Gus Caito and the Mortar and Fuel Company to foreclose a mechanic's lien. The Mortar and Fuel Company filed a cross-complaint to foreclose its lien on the property.

From a judgment and decree for the plaintiffs and the cross-complainant, appellants appeal and contend that the decision of the court is not sustained by sufficient evidence and is contrary to law.

The sole and only question presented by this appeal is: Is there sufficient evidence to sustain the finding that appellees installed the heating plant under an agreement with appellants?

There is evidence to establish the following facts: Appellants are husband and wife and for many years have owned certain real estate in the city of Indianapolis by the entireties. There are and for some time have been two dwelling houses on this land. Appellants reside in one of these houses and their son Gus Caito in the other. During the summer and fall of 1920, appellants erected a large garage on the real estate so owned by them. This garage was located between the two houses and was completed sometime in September, 1920. The son had been renting the house

in which he lived and was paying a monthly rental of $40 therefor. Upon the completion of the garage he rented it at a monthly rental of $60. In September, 1920, before the garage was completed and while appellees were doing some work on the same, appellants' son Gus told appellee Emil Fishman that he wanted to put a steam heating plant in the garage and to have a pipe run into the basement of the house in which he lived.

Appellees had been in the plumbing business for a great many years, although they had not theretofore been engaged in installing steam heating plants. They were well acquainted with appellants and had been doing their plumbing work for about thirteen years. When the son informed them that he wanted the heating plant installed appellees said they could do it. Immediately following this conversation appellees got a wholesaler of steam heating plants to measure the garage and house in order to ascertain the size of the boiler. Two or three days later appellee Emil and Gus Caito went to see the wholesaler so as to learn what the boiler and necessary pipes would cost. Upon receiving this information appellees informed the son they would furnish the material and install the heating plant in the garage and run the pipe into the basement of the house where the son resided for $1,150. They then returned to the garage, when the son called his mother. She came over to the garage where the three, Emil Fishman, Gus Caito and the mother, Michela Caito, talked the matter over. The son talked with his mother in Italian, she not being able to talk very good English. When she was told what it would cost she said it was "too much; that $1,150 was too much," but she agreed to it, and patted Mr. Fishman and her son on the shoulders, after which the son took his truck and went to the wholesale house and got the pipe. The

evidence is not clear that Philip Caito was present during any of the conversation on this day.

Appellees began installing the plant in September, 1920, and completed their work February 9, 1921. During the time appellees were doing this work, Mrs. Michela Caito was around and in the garage every day. Philip Caito was there on a number of different days. It is to be inferred from the evidence that he gave but little attention to the construction of the garage. and the installation of the heating plant. He seems to have trusted this work to his wife and son, there being evidence to the effect that the son was acting as his manager in this work.

About two weeks after the agreement for the installation of the heating plant was entered into, the son informed appellees that he had concluded to have the radiators installed in the house in which he was living, and it was agreed that if the son would furnish the radiators and material for that purpose appellees would do the necessary work for $75. Appellees thereafter did the necessary work installing the radiators in the house. Before the agreement for the putting the boiler in the garage was made and while the parties were figuring on the size of the boiler the son suggested that they wanted the boiler to be large enough to furnish sufficient steam to heat not only the garage but both of the houses owned by appellants, and a boiler was put in with that idea in mind. Philip Caito and the son employed the contractor to build the garage. In building this garage a compartment or subcellar was made under the stairway in which to put a heating plant. When this agreement was entered into the garage was yet in the process of construction. It was being built with the idea that it should be heated with a furnace. The chimney or flue had been constructed with an opening large enough to accommodate and receive the pipe

of a furnace. The son and his mother looked after the erection of the garage and the installation of the furnace. There is no evidence that appellants had leased the house or the garage to the son for any definite period of time. So far as is disclosed by the evidence he was no more than a tenant at will or from month to month.

Appellants' sole and only contention is that there is no evidence to show that appellants themselves or through their son ever authorized appellees to put the heating plant in their buildings and that their son was a tenant only and in ordering the heating plant acted for himself alone.

It only requires a casual reading of the evidence to disclose that the theory of appellants on the trial of this cause was that appellees warranted the heating plant installed by them to be of sufficient capacity to properly heat the garage and residence, and that the same failed to comply with the warranty. While appellants and the son filed an answer specifically denying that appellants had entered into a contract with appellees and alleging that the agreement made by appellees in relation to the heating plant was with the son alone in his individual capacity and not as agent of appellants, it is noticeable that neither of appellants testified at the trial. Gus Caito and his wife were the principal witnesses for appellants and their testimony was devoted almost exclusively to the alleged warranty of the heating plant and its failure to fulfill such warranty. They did, however, testify to facts which if standing alone and uncontradicted would justify a finding that the agreement for the heating plant was made with the son acting for himself and not for his father and mother. But their testimony in this regard and the inferences to be drawn from such testimony is contradicted by other evidence, and is not as appellants

contend uncontradicted. The court may not have believed their testimony. The court may have concluded that the son, who occupied the property as a tenant of uncertain duration, was acting as the agent of his father and mother and not for himself in making the contract for the heating plant, or that the mother and son acted for appellant Philip.

Appellants state a number of legal propositions relating to the necessity of proving a contract with appellants in order to hold them liable for the cost of the heating plant and to authorize the foreclosure of a lien against property held by them. We readily concede the correctness of all the propositions so stated by appellants and that the authorities cited by them support such propositions. Appellants place special reliance on *Holland* v. *Farrier* (1921), 75 Ind. App. 368, 130 N. E. 823; but the evidence in that case is materially different from the evidence in the instant case. What was said in that case, as well as what is said in any case where the court is discussing the sufficiency of the evidence to sustain the verdict of the jury or the finding of the court, must be viewed and read in the light of the evidence under consideration.

We have read and re-read the evidence in the instant case, as set out in the several briefs as well as in the record and hold that the evidence is sufficient to sustain the finding of the court, and that the finding is not contrary to law.

The judgment is therefore affirmed.